[No. 13683-0-II.   Division Two.   December 26, 1991.]

DARRELL E. LEE, *Appellant*, v. THE COLUMBIAN, INC., ET AL, *Respondents*.

---

*Darrell E. Lee,* pro se, and *Lee, Mitchelson, Yoseph, Langsdorf & Gray,* for appellant.

*Bruce E.H. Johnson, Robert G. Homchick,* and *Davis Wright Tremaine,* for respondents.

WORSWICK, C.J. — Darrell Lee appeals a summary judgment dismissing his defamation claims against The Columbian and an order imposing CR 11 sanctions against him. We affirm.

On May 6, 1988, The Columbian published an article under the headline "Cardroom parking fees reduce taxes". The article, written by reporter Doug Levy, began: "Darrell Lee, a high-profile attorney and enterprising poker promoter, has devised an unusual way to reduce his taxes and stay within the letter of the law on gambling activity at his two La Center cardrooms." The article described how Lee reduced the playing fee at his poker tables from $2 to $1.50 per half hour and, at the same time, instituted a 50-cent per half hour "parking fee".[1]

In an editorial, published June 15, 1988, The Columbian expressed its fear that gambling would change the town of La Center for the worse and questioned Lee's plans to build a new cardroom after he had "warned the town council several weeks ago that the area couldn't support a third cardroom being proposed by another group of investors."

A third article, appearing in the August 11, 1988, issue of The Columbian, was critical of a proposal before the state Gambling Commission that, if approved, would ease the rules governing legalized gambling. The newspaper again voiced its opinion that a bigger gambling industry would not be in La Center's best economic or social interest. The article did not refer to Darrell Lee by name and it did not mention any of his cardrooms.

---

[1]The State counted the parking fee money as nongambling income in partial satisfaction of the rule that at least half of the revenue from a gambling establishment must come from the sale of food and drink. However, a municipality cannot tax nongambling receipts and one of the results of Lee's new parking fee was the reduction of his tax obligation to the town of La Center. The body of the article did not say whether Lee intended to use the parking fee to reduce his taxes. It did report that Lee promised the town council he would donate 10 percent of his parking fees to the town.

Lee sued The Columbian for defamation. He also asserted the tort of outrage, based on what he referred to as Doug Levy's offensive news gathering techniques. Lee agreed to dismiss the June 15, 1988, defamation claim after he was informed by counsel for The Columbian that a tape recording of the town council meeting verified the newspaper's version of his remarks. Lee had claimed earlier, in an affidavit, that he said no such thing. Along the way Lee also voluntarily dismissed his outrage claim against Levy and substituted causes of action for invasion of privacy and telephone harassment.

The trial court summarily dismissed Lee's remaining claims and imposed CR 11 sanctions for The Columbian's costs of defending the June 15, 1988, defamation claim and the outrage claim. Lee contends that the trial court erred in concluding as a matter of law that the May 6, 1988, headline and lead sentence were not false or capable of defamatory meaning. He also contests the imposition, although not the amount, of the CR 11 sanctions.

■ A defamation claim requires proof of falsity, unprivileged communication, fault and damages. To avoid summary judgment, the plaintiff must show genuine issues of fact as to these elements. *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982). The claim will survive summary judgment if but only if, on the factual record, a reasonable jury, applying the required standard of proof, could find for the plaintiff. *See Herron v. KING Broadcasting Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989).[2]

---

[2]Although it is not raised by either party, we note that there is a question as to the appropriate standard of proof in this case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Mark v. Seattle Times*, 96 Wn.2d at 486-87; *Dunlap v. Wayne*, 105 Wn.2d 529, 533-35, 716 P.2d 842 (1986), *cited in Camer v. Seattle Post-Intelligencer*, 45 Wn. App. 29, 36, 723 P.2d 1195 (1986) (defamation plaintiff resisting defense motion for summary judgment by a media defendant must establish prima facie case as to each element of defamation by evidence of convincing clarity), *review denied*, 107 Wn.2d 1020, *cert. denied*, 482 U.S. 916, 96 L. Ed. 2d 677, 107 S. Ct. 3189 (1987). *But see Haueter v. Cowles Pub'g Co.*, 61 Wn. App. 572, 577-84, 811 P.2d 231

Remarkably, Lee argues that the May 6, 1988, headline and lead sentence were false and capable of defamatory meaning, even while conceding that the two statements were true on their face. He contends that "using irony and innuendo, the headline and lead sentence both strongly implied that Plaintiff was using a tax loophole to improperly reduce his taxes." Lee's argument is without merit.

██ ██ Defamatory meaning may not be imputed to true statements. The defamatory character of the language must be apparent from the words themselves. Washington courts are "bound to invest words with their natural and obvious meaning, and may not extend language by innuendo or by the conclusions of the pleader." *Sims v. KIRO, Inc.*, 20 Wn. App. 229, 234, 580 P.2d 642, *review denied*, 91 Wn.2d 1007 (1978), *cert. denied*, 441 U.S. 945, 60 L. Ed. 2d 1047, 99 S. Ct. 2164 (1979). Even if language is ambiguous, resolution in favor of a "disparaging connotation" is not justified. *Exner v. AMA*, 12 Wn. App. 215, 219, 529 P.2d 863, 75 A.L.R.3d 603 (1974), *review denied*, 85 Wn.2d 1003 (1975). The May 6, 1988, headline and lead sentence were not defamatory.[3]

---

*(1991)* (questions *Mark* and *Dunlap* in light of *Anderson v. Liberty Lobby*; holds that the test for standard of proof on summary judgment is not whether defendant is a member of the media, but whether *the speech at issue is of public concern*; if speech is not of public concern the preponderance of the evidence standard of proof applies to all elements of the prima facie case). Our Supreme Court has declined to resolve the standard of proof issue. *LaMon v. Butler*, 112 Wn.2d 193, 196, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989). Similarly, resolution of this case does not require us to address the question. Even if Lee were entitled to prove his case by the more relaxed preponderance of the evidence standard he has failed to meet his burden.

[3] In support of his argument that defamatory meaning may be implied from a true statement, Lee relies on the following language in *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 445, 546 P.2d 81 (1976):

a private individual, who is neither a public figure nor official, may recover actual damages for a defamatory falsehood . . . where the substance makes substantial dangers to reputation apparent, on a showing that in publishing the statement, the defendant knew or . . . should have known that the statement was false, or would create a false impression in [a] material respect.

(Italics omitted.) Lee's reliance is misplaced. *Taskett* stands for the narrow proposition that a private individual may recover damages in a defamation case

Lee also challenges the CR 11 sanctions imposed because of his outrage claim and his defamation claim arising out of the June 15 editorial.[4]

■ CR 11 sanctions may be imposed if a pleading, motion, or memorandum was (1) not well grounded in fact; (2) not well grounded in law; and (3) viewed objectively, the culpable party or attorney failed to make a reasonable inquiry into the factual or legal basis of the action. *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 341, 798 P.2d 1155 (1990).[5] We review the imposition of CR 11 sanctions for abuse of trial court discretion. *Cascade Brigade v. Economic Dev. Bd.*, 61 Wn. App. 615, 811 P.2d 697 (1991).

■■ An outrage claim lies under Washington law only if a plaintiff can show emotional distress as the result of conduct so extreme or severe that no reasonable man could be expected to endure it. *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975). Lee's outrage claim was filed after he told his lawyer (his law firm associate) that

---

without a showing of actual malice, as is required for a public figure plaintiff. We do not read *Taskett* as holding that defamatory meaning can be found by implication when the literal language is not false.

[4]CR 11 provides:

"Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record . . . The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . ."

[5]The trial court should consider the following factors in deciding whether counsel made a reasonable inquiry: "[T]he knowledge that reasonably could have been acquired at the time the pleading was filed, . . . the type of claim and the difficulty of acquiring sufficient information, . . . which party has access to the relevant facts, and . . . the 'significance' of the claim in the pleading as a whole.' . . .". *Cascade Brigade v. Economic Dev. Bd.*, 61 Wn. App. 615, 620, 811 P.2d 697 (1991) (quoting *Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1142 (9th Cir. 1990), *vacated*, 929 F.2d 1358 (1991)).

Levy had telephoned Lee several times, once at home; that Levy had, on one occasion, attempted to speak with Lee at one of his cardrooms; and that Levy had approached Lee several times at public gatherings. Levy's conduct does not remotely approach the legal definition of outrage. Moreover, Lee's associate filed the pleading without any investigation beyond Lee's statement that he was extremely angry, or "outraged", with Levy. *See In re Lasky*, 54 Wn. App. 841, 776 P.2d 695 (1989) (attorney's "blind reliance" on a client seldom constitutes reasonable inquiry for purposes of CR 11). Further, one of Lee's associates researched the tort of outrage *after* the complaint was filed and concluded that Levy's conduct was invasion of privacy, at most. The only outrage in this case was Lee's claim of outrage.

Similarly, the defamation claim arising out of the June 15, 1988, editorial was dead wrong. Lee in fact said substantially what the paper reported. The most cursory investigation would have disclosed as much. There was no error in the imposition of CR 11 sanctions.

Finally, The Columbian seeks attorney fees here, claiming that this is a frivolous appeal. *See Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980). We agree. Fees will be awarded in accordance with RAP 18.1(d).

Affirmed.

PETRICH and ALEXANDER, JJ., concur.