234 P.3d 332 (2010)
Warren YEAKEY, Respondent,
v.
HEARST COMMUNICATIONS, INC., a Delaware corporation, and Texas Newspaper, Inc., a Delaware corporation, as General Partners of Hearst Newspapers Partnership, L.P., owner of and DBA Seattle Post-Intelligencer, and Andrea James and "John Doe" James, a married couple, and John Iwasaki and "Jane Doe" Iwasaki, a married couple, Appellants.
No. 39263-1-II.
Court of Appeals of Washington, Division 2.
July 7, 2010.
*333 Matt Andrew Renda, Law Office of Matt A. Renda, Tacoma, WA, for Respondent.
Stephen Alan Smith, K & L Gates LLP, Seattle, WA, Jonathan R. Donnellan, The Hearst Corporation, New York, NY, for Appellants.
WORSWICK, J.
¶ 1 Hearst Communications, Inc., the parent company of the Seattle Post-Intelligencer (PI), appeals from the trial court's denial of PI's CR 12(b)(6) motion to dismiss a defamation claim brought by Warren Yeakey following the publication of a series of news articles. We reverse and remand for dismissal.

FACTS
¶ 2 On November 16, 2006, Yeakey was operating a large tower crane at a Bellevue construction site when it collapsed. The collapse caused significant property damage and killed one person in a nearby apartment building. The Washington State Department of Labor and Industries (L & I) immediately began an investigation into the collapse. L & I required Yeakey to undergo a drug test as part of the investigation.
¶ 3 On November 18, the PI ran a series of stories regarding the accident. In bold text along the top of the front page, the PI announced, "Operator in crane wreck has history of drug abuse." Clerk's Papers (CP) at 71. Below the headline was a large photograph of the collapsed crane and emergency crews on the scene. To the right of the photograph, the PI ran a small side feature entitled, "GAPS IN SAFETY CONTROLS," which listed potential safety failures, including statements that "[t]he state does not require drug tests before crane operators are *334 hired" and "[c]ranes must be inspected before each use, but it is usually done by the operator." CP at 71.
¶ 4 Below the large photograph, the front page featured an article entitled, "Friends mourn man `enthusiastic for life,'" along with the decedent's picture. CP at 71. Just to the right of that article was another article entitled, "Man completed mandated rehab program after his last arrest in 2000." CP at 71. That article discussed Yeakey's criminal history, including that he had "at least six drug convictions" and convictions for domestic violence, marijuana possession, and soliciting a prostitute. CP at 11. The article also noted that Yeakey had been charged with and acquitted of two counts of statutory rape. The article discussed causes of stress on a crane and how L & I did not perform drug testing on crane operators as a matter of course. And the article further explained that an investigation into the cause of the accident remained ongoing, with structural failure, operator error, or a combination of the two as possible causes of the collapse.
¶ 5 On November 20, Yeakey's drug test came back negative. L & I issued its investigation report on May 11, 2007, and determined that the collapse was caused by a flawed engineering design, not by operator error.
¶ 6 Yeakey sued the PI, alleging defamation, false light invasion of privacy, negligent infliction of emotional distress, and outrage. He argued that the juxtaposition of the article's statements with a photograph of the damage, a photograph of the deceased, and a graphic with bullet points contending "GAPS IN SAFETY CONTROLS" falsely implied that Yeakey's drug use, operator error, or failure to sufficiently perform safety inspections were factors in the collapse. CP at 11. He concedes that all the statements in the articles are true and that his claims are not based on a contention that facts were omitted from the articles.
¶ 7 The PI filed a CR 12(b)(6) motion to dismiss,[1] arguing that (1) Washington does not recognize a claim for defamation by implication based on juxtaposition of truthful statements, (2) defamation by implication cannot succeed where the alleged false implications are directly contradicted by the article, and (3) the implications cannot be reasonably drawn from the article. The PI also argued that Yeakey improperly claimed false light because Washington law does not recognize such a claim and because Yeakey could not prove the required falsity. The PI sought to dismiss Yeakey's emotional distress and outrage claims because Yeakey could not demonstrate emotional distress or outrage without defamation and the publication was not negligent or outrageous. The trial court denied PI's motion.
¶ 8 The PI moved for reconsideration, arguing for the first time that the challenged statements in the article were non-actionable opinion, privileged as fair and accurate reporting of judicial proceedings, and protected by the First Amendment as true statements based on public records. The trial court again denied the motion. We granted the PI's motion for discretionary review.

ANALYSIS

STANDARD OF REVIEW
¶ 9 We review a trial court's decision on a CR 12(b)(6) motion to dismiss as a question of law de novo. San Juan County v. No New Gas Tax, 160 Wash.2d 141, 164, 157 P.3d 831 (2007). Dismissal is only appropriate under CR 12(b)(6) when it appears beyond a doubt that the claimant can prove no set of facts consistent with the complaint that justifies recovery. San Juan County, 160 Wash.2d at 164, 157 P.3d 831. A trial court should grant a CR 12(b)(6) motion "only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." San Juan County, 160 Wash.2d at 164, 157 P.3d 831.

DEFAMATION BY IMPLICATION THROUGH JUXTAPOSITION
¶ 10 The sole question before us is whether Washington recognizes a cause of *335 action for defamation by juxtaposition in a case where all the statements in the publication are true and where there is no allegation that a false impression could be contradicted by omitted facts. The PI contends that the trial court's decision to allow Yeakey's defamation by implication claim to proceed is contrary to established law.
¶ 11 A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages. Mohr v. Grant, 153 Wash.2d 812, 822, 108 P.3d 768 (2005). The falsity prong of a defamation claim is satisfied with evidence that a statement is probably false or leaves a false impression due to omitted facts. Mohr, 153 Wash.2d at 825-30, 108 P.3d 768. But we have held that a plaintiff may not base a defamation claim on the negative implication of true statements. Lee v. Columbian, Inc., 64 Wash.App. 534, 538, 826 P.2d 217 (1991). Defamatory meaning may not be imputed to true statements. Lee, 64 Wash.App. at 538, 826 P.2d 217. Courts must give words their "`natural and obvious meaning and may not extend language by innuendo or by the conclusions of the pleader.'" Lee, 64 Wash.App. at 538, 826 P.2d 217 (quoting Sims v. KIRO, Inc., 20 Wash.App. 229, 234, 580 P.2d 642 (1978), review denied, 91 Wash.2d 1007, 1978 WL 61474, cert. denied, 441 U.S. 945, 99 S.Ct. 2164, 60 L.Ed.2d 1047 (1979)). And the "defamatory character of the language must be apparent from the words themselves." Lee, 64 Wash.App. at 538, 826 P.2d 217.
¶ 12 Yeakey asserts that our Supreme Court expanded the rule of law as articulated in Lee to allow his defamation by implication claim here. Yeakey refers to a comment in Mohr for this proposition, where the court stated, "Defamation by implication occurs where `the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts.'" 153 Wash.2d at 823, 108 P.3d 768 (quoting PROSSER AND KEETON ON THE LAW OF TORTS § 116, at 117 (W. Page Keeton ed., 5th ed. 1984 & Supp. 1988) (footnote omitted)). The issue in Mohr, however, was whether "otherwise true statements created a false impression by omission of material facts and therefore resulted in defamation by implication." 153 Wash.2d at 820-21, 108 P.3d 768. The Mohr court ultimately held that the relevant concern is whether the article leaves a provably false impression contradicted by the inclusion of omitted facts. 153 Wash.2d at 827, 108 P.3d 768. Nothing in this case suggests that the PI omitted material facts in its articles.
¶ 13 Moreover, the Prosser and Keeton quotation in Mohr was dicta and did not serve to change the standard articulated in Lee. See Kish v. Ins. Co. of North Am., 125 Wash.2d 164, 172, 883 P.2d 308 (1994) (court is not bound by language in a court opinion when the court did not address or consider the issue directly). In fact, Mohr does not mention Lee. Yeakey concedes that under Lee, his defamation claim cannot stand. Yeakey bases his argument on the mistaken belief that Mohr expanded the defamation tort to include defamation by implication through juxtaposition of truthful statements. Washington courts have not recognized such claims, and we decline to do so here because Lee remains the law. Thus, the Pi's argument prevails.[2]
¶ 14 Reversed and remanded.
We concur: PENOYAR, C.J., and ARMSTRONG, J.
NOTES
[1] Under CR 12(b)(6), the trial court, on a motion by a party, may dismiss a claim when the plaintiff fails to state a claim upon which relief may be granted.
[2] Yeakey asserted a series of other claims below, including false light, negligent infliction of emotional distress, and outrage, but conceded that those claims would rise and fall with his defamation claim. Because he has not prevailed on his defamation claim, we do not consider his other claims.