## Tony Martin vs. Avik Roy.

No. 99-P-1649.

Middlesex. January 8, 2002. - May 8, 2002.

Present: Porada, Cowin, & Mills, JJ.

Libel and Slander. Law of the Case. Practice, Civil, Continuance, Admissions, New trial, Disqualification of judge. Evidence, Relevancy and materiality, Deposition, State of mind. Malice. Judge.

In a defamation action in which a motion judge had previously denied a motion for summary judgment on the ground that the plaintiff's status as a public figure was a factual issue to be determined by a jury upon appropriate instructions from the trial judge, the trial judge did not err in failing to follow the ruling of the motion judge where, under the doctrine of the law of the case, the trial judge was not obliged to follow the earlier ruling; where the plaintiff stipulated that he was a public figure for purposes of this litigation and did not seek relief from this stipulation; and where the trial judge ruled that, even without the stipulation, she would have concluded, based upon her findings, that the plaintiff was a limited public figure. [644-645]

There was no abuse of discretion shown in a judge's denial of a motion for a continuance in a civil case in which the plaintiff's counsel was recovering from foot surgery. [645]

In a defamation action, the judge properly allowed evidence of the plaintiff's alleged anti-Semitism and other allegedly scandalous material in evidence, where the material either was admitted for the limited purpose of allowing the defendant to show that any damage to the plaintiff's reputation could have been derived elsewhere as opposed to a publication by the defendant, or was relevant to issues in this case; further, there was no merit that the plaintiff's claim that certain of the material should not have been admitted because it was indicative of bias against the plaintiff in violation of Mass. R. Prof. C. 3.4(i). [646-647]

At a civil trial, there was no error in the plaintiff's not being permitted to testify to statements made by a witness at a deposition in another court action for purposes of impeaching the defendant and demonstrating that a person who furnished the defendant with information harbored prejudice against the plaintiff, where the witness in question was not shown to be unavailable, and where the defendant had been neither a party nor a participant at the deposition. [647]

At the trial of a defamation case, the judge did not err or abuse her discretion in refusing to admit in evidence a certain opinion of the plaintiff's and other information received four years after publication of the allegedly

defamatory material, where neither was relevant to a determination of the defendant's state of mind at the time of publication. [647-648]

In a defamation action, the judge did not improperly restrict the plaintiff's right to cross-examine the defendant concerning his views on affirmative action and his attitude toward the plaintiff, where the defendant's views on affirmative action would not have been relevant to establish whether he knew the statement at issue was false or published it with reckless disregard whether it was false, and where the plaintiff's attorney at trial acknowledged that he understood that the defendant's motives were not at issue and, in any event, did explore the defendant's attitude toward the plaintiff. [648]

In a civil action, the judge did not abuse her discretion in not considering the plaintiff's requests for admission, where the plaintiff had served the requests upon the defendant well beyond the permissible discovery period. [648-649]

There was no merit to a civil plaintiff's contention that his motion for a new trial should have been granted because the trial judge was biased against him as indicated by certain rulings against him and by her prior association with the law firm that represented the defendant in this action. [649]


CIVIL ACTION commenced in the Superior Court Department on December 10, 1993.

The case was heard by *Judith Fabricant*, J., and a motion for a new trial was heard by her.

*Winston Kendall* for the plaintiff.

*Robert A. Bertsche* (*Jennifer L. Chiasson* with him) for the defendant.

PORADA, J. Wellesley College professor Tony Martin brought a defamation action in the Superior Court against student reporter Avik Roy, based upon a statement[1] contained in an article published in the September, 1993, edition of a Wellesley-M.I.T. student journal called Counterpoint. Roy moved for summary judgment. A Superior Court judge denied the motion on the ground that Martin's status as a public figure was a factual issue to be determined by a jury upon appropriate instructions

---

[1]The statement was contained in the tenth paragraph of an article entitled "Afrocentric Scholar Accused of Harassment" and read as follows: "Counterpoint has also learned that, according to sources within the administration, Prof. Martin gained tenure within the Africana Studies department only after successfully suing the college for racial discrimination, providing a possible explanation as to Martin's outspoken racial views as well as the administration's reluctance to openly censure him." Roy conceded that Martin obtained tenure several years before he sued the college for racial discrimination.

from the trial judge.[2] Subsequent to this ruling, Roy filed a new motion to determine Martin's status. Another Superior Court judge, who was to act as the trial judge, after reviewing all materials submitted in regard to this motion and the case file, ruled that Martin was a public figure for purposes of this litigation. Her ruling was based on Martin's stipulation admitting that he was a public figure, and Martin's failure to seek relief from his stipulation. After a two-day bench trial, the judge ruled that Martin had failed to prove his claim and dismissed his complaint. Martin then filed a motion for a new trial alleging that the trial judge was biased against him. The trial judge denied the motion.

On appeal, Martin claims that the trial judge erred in determining that Martin was a public figure without allowing the parties to litigate this issue; denying his motion to continue; making certain evidentiary rulings; and denying his motion for a new trial. We affirm.

1. *Martin's status as a public figure.* Martin argues that the judge erred in failing to follow the ruling of the first Superior Court judge that whether Martin was a public figure was a determination to be made by a jury upon appropriate instructions by the trial judge. Martin argues that this was the law of the case and the issue of Martin's status should have been litigated at trial. However, under the doctrine of the law of the case, a second judge is not obliged to follow an earlier ruling by another judge. *Salter* v. *Scott,* 363 Mass. 396, 402 (1973). The trial judge has the power to revise the earlier ruling in any way that appears just and proper. *Ibid.* See *Shine* v. *Campanella & Cardi Constr. Co.,* 342 Mass. 150, 152-153 (1961).

It is well established that the question whether the plaintiff is a public figure is "one for the court to answer whenever (a) all of the facts bearing thereon are uncontested or agreed by the parties, (b) the case is tried before a judge without a jury, or (c) all of the facts bearing thereon are specially found and reported by the jury by way of answers to special questions submitted to them; and that otherwise, in a case tried to a jury, it is a question for the jury to answer after instructions by the judge on the

---

[2]Neither party claimed a jury trial.

applicable law and on what facts must be found to constitute the plaintiff . . . a public figure." *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 862-863 (1975). Where Martin stipulated that he was a public figure for purposes of this litigation and did not seek relief from this stipulation, compare *Malone* v. *Bianchi*, 318 Mass. 179, 182-183 (1945), and Roy was in agreement, the judge properly concluded in advance of the trial that Martin's status as a public figure was established.

Martin also argues that the judge, in adopting Martin's stipulation, failed to engage in the analysis required to determine if Martin was a limited public figure, namely, a determination that a public controversy existed; Martin had injected himself or participated in the public controversy; and the statement at issue was germane to Martin's participation in the public controversy. *Bowman* v. *Heller*, 420 Mass. 517, 523 & n.7, cert. denied, 516 U.S. 1032 (1995). No such analysis is required where the judge relied upon Martin's stipulation. See, e.g., *Lyons* v. *New Mass Media, Inc.*, 390 Mass. 51, 56 (1983); *Godbout* v. *Cousens*, 396 Mass. 254, 257-258 (1985). Nevertheless, contrary to Martin's contention, the judge did engage in such an analysis. Specifically, the judge ruled that, even without the stipulation, she would have concluded that Martin was a public figure based upon her findings that a public controversy existed regarding Martin's scholarship, teaching methods, and qualifications as a tenured professor; Martin had injected himself into the controversy and participated therein by his public lectures and writings, which had attracted national media attention; and the statement was germane to Martin's qualifications as a tenured professor.

2. *Motion for a continuance.* Martin filed a motion to continue the trial on December 10, 1998. The case was scheduled for trial on December 15, 1998. The basis of Martin's motion was that his counsel had recently undergone foot surgery, was in pain and was taking medication — Motrin and "some kind of Tylenol." Where the trial had been pending for five years, the parties were ready for trial, and the judge was willing to accommodate Martin's counsel's physical limitations and condition in this two-day jury-waived trial, there was no abuse of discretion shown in the trial judge's denial of the motion. *Hunnewell* v. *Hunnewell*, 15 Mass. App. Ct. 358, 363-364 (1983).

3. *Evidentiary rulings.*

(a) *Prejudicial evidence.* Martin claims that the trial judge improperly allowed evidence of Martin's alleged anti-Semitism and other scandalous material in evidence. He argues that the evidence was irrelevant or even if it were relevant, the prejudice to Martin outweighed its relevance. He also argues that the evidence should not have been admitted because its introduction by Roy's counsel was in violation of S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998), Mass.R.Prof.C. 3.4(i), 426 Mass. 1390 (1998), which forbids conduct manifesting bias or prejudice against a party based on race.

Prior to trial, Martin requested that the judge strike various materials proffered by Roy in support of his motion to determine Martin's status as a public figure. The judge denied the motion but explained that she would make a specific ruling on the admissibility of this material as the materials were offered in evidence. Although Martin argues that those materials unfairly painted him as anti-Semitic and seriously prejudiced him in obtaining a fair trial, his brief contains few references to the pages of the appendix or transcript at which the evidence was identified, offered, and received in evidence, as required by Mass.R.A.P. 16(e), as amended, 378 Mass. 940 (1979). Our discussion will, thus, be confined to those materials that have been specifically referenced in compliance with this rule.

Martin specifically objected to the introduction in evidence of two newspaper articles, an op-ed piece from the Washington Post arguing that Martin should be fired for his use of a book published by the Nation of Islam, The Secret Relationship Between Blacks and Jews (1991), as a scholarly text in his class room, and an editorial from the Boston Globe which stated that Martin was another academic recycling Nazi propaganda. The judge admitted the articles for the limited purpose of allowing Roy to show that any damage to Martin's reputation could have been derived from those publications as opposed to Roy's statement in Counterpoint.

Martin also objected to Roy's interrogation of Martin on his use of the book, The Secret Relationship Between Blacks and Jews, as assigned reading in a course taught by him at Wellesley College. Here, again, the interrogation was relevant, for it

was Martin's use of this text as an assigned teaching tool that created the public controversy in the local and national media over his scholarship and teaching methods, and his qualifications as a tenured professor, resulting in Martin's public defense of the same by his publication of a book, The Jewish Onslaught, Despatches from the Wellesley Battlefront (1993), and other writings and public lectures. Similarly, his book, The Jewish Onslaught, and a letter written by the president of Wellesley College were illustrative of the public controversy, Martin's participation therein, and the damage to Martin's reputation from sources other than Roy's article in Counterpoint. Because those materials were relevant to the determination of issues in this case, the judge did not err in allowing their introduction in evidence.

Likewise, we conclude that there is no merit to Martin's claim that those materials should not have been admitted because they were indicative of conduct manifesting bias or prejudice against Martin in violation of Mass.R.Prof.C. 3.4 (i). Apart from the questionable applicability of the rules of professional conduct to a determination of the admissibility of evidence, this rule does not preclude legitimate advocacy when race, religion, national origin or another similar factor is an issue in a proceeding. Such was the case in this proceeding.

(b) *Deposition testimony of a nonwitness.* Martin argues that he should have been permitted to testify to statements made by a witness at a deposition in another Superior Court action for purposes of impeaching Roy and to demonstrate that the person who allegedly furnished Roy with the erroneous information about Martin's procurement of tenure harbored prejudice against Martin. Unlike *Commonwealth* v. *Mustone*, 353 Mass. 490, 492 (1968), on which Martin relies, in which the prior testimony under oath of a witness who was no longer available was ruled admissible because the party against whom it was offered had had the opportunity to cross-examine the witness at said hearing, the witness in question in this case was not shown to be unavailable and Roy was neither a party nor a participant at the deposition of the witness in the unrelated Superior Court action. See *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986).

(c) *Politics of Counterpoint.* Martin argues that the judge

improperly excluded Martin's testimony regarding his opinion about the political agenda of Counterpoint based on his reading of the newspaper and an e-mail of a former editor of Counterpoint as to his reasons for resigning from Counterpoint in November, 1997. Neither Martin's opinion of Counterpoint's political agenda nor an e-mail some four years after the publication of Roy's article was relevant to a determination of Roy's state of mind at the time of the publication of the article in 1993. The judge did not err or abuse her discretion in refusing to admit this evidence.

(d) *Roy's views on affirmative action and attitude toward Martin.* Martin contends that the judge improperly restricted his right to cross-examine Roy concerning his views on affirmative action and his attitude toward Martin. The judge ruled that Roy's views on affirmative action and his views about Martin were not relevant. In order to recover in this action, Martin was required to establish actual malice, which is "not necessarily proved in terms of ill will or hatred, but is proved rather by a showing that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false." *Stone* v. *Essex Co. Newspapers, Inc.,* 367 Mass. 849, 867 (1975). See *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279-280 (1964). There is no question that Roy's views on affirmative action would not be relevant to establish whether he knew the statement at issue was false or published it with reckless disregard of whether it was false. A closer question is presented with respect to his view or attitude toward Martin. Roy's view or motive may well have been marginally relevant to prove that he acted with reckless disregard of the truth of the published statement. See *Harte-Hanks Communications, Inc.* v. *Connaughton,* 491 U.S. 657, 666-668 (1989). Nevertheless, notwithstanding Martin's argument on appeal that he should have been able to explore Roy's attitude toward Martin, at trial Martin's attorney acknowledged that he understood that Roy's motives were not at issue and, in any event, did indeed explore Roy's attitude toward Martin. There was, therefore, no error.

(e) *Requests for admission.* Martin argues that the subject matter of his requests for admission should have been deemed conclusively established for purposes of his trial because of

Roy's failure to respond to the requests under Mass.R.Civ.P. 36(a), 365 Mass. 795 (1974). The judge ruled that Martin had served the requests upon Roy well beyond the permissible discovery period and, thus, she would not consider them. Based upon our review of the record, the judge did not abuse her discretion in doing so.

4. *Motion for a new trial.* Martin argues that his motion for a new trial should have been granted because the trial judge was biased against him as indicated by her numerous rulings against him and her prior association with the law firm that represented Roy in this action. The motion is meritless.

As noted in our opinion, the judge's adverse rulings upon which Martin relies as indicative of bias were neither erroneous nor an abuse of her discretion. Further, contrary to Martin's argument, the Code of Judicial Conduct did not require the trial judge to recuse herself from this proceeding. Rather, S.J.C. Rule 3:09, Canon 3(C)(1)(b), as appearing in 382 Mass. 811 (1981), provides only that a judge should disqualify herself if "[s]he served as a lawyer in the matter of controversy, or a lawyer with whom [s]he previously practiced law served during such association as a lawyer concerning the matter . . . ." The trial judge in this case served as an associate with Roy's law firm from 1981 to 1984 and no lawyer in that firm served as a lawyer concerning this matter during the trial judge's association with that firm.[3] The judge, therefore, had no obligation of recusal and properly exercised her discretion in ruling that her recusal was not warranted.

*Judgment affirmed.*

*Order denying motion*
*for new trial affirmed.*

---

[3]The article was not published until September, 1993, and suit was commenced in December, 1993.