[No. 67552-4-I.   Division One.   July 30, 2012.]

HUGH K. SISLEY ET AL., *Appellants*, v. SEATTLE SCHOOL DISTRICT NO. 1, *Respondent*.

*Jeffrey C. Grant* (of *Skellenger Bender PS*), for appellants.

*Jeffrey A.O. Freimund* (of *Freimund Jackson & Tardif LLP*), for respondent.

¶1 DWYER, J. — Hugh and Martha Sisley (the Sisleys) appeal from the trial court's summary judgment dismissal of their defamation action asserted against Seattle School District No. 1. The allegedly defamatory statement was written by a high school student journalist and published in

a student newspaper, *The Roosevelt News*, which is produced as part of the school curriculum at Roosevelt High School. In the trial court, the Sisleys failed to establish a prima facie case of falsity of the allegedly defamatory statement, as required in order to successfully resist a defense motion for summary judgment in a defamation action. Thus, summary judgment dismissal of their claim was appropriate. Accordingly, we affirm the trial court's order.

I

¶2 The March 2009 edition of *The Roosevelt News*, Roosevelt High School's student newspaper, included an article entitled "Sisley Slums Cause Controversy: Developers and neighborhood clash over land use." The article, written by Roosevelt High School student Emily Shugerman, discussed the controversy regarding development plans on properties surrounding the high school—properties owned by brothers Hugh and Drake Sisley (the Sisley brothers). Shugerman's article stated that "infamous landlords Drake and Hugh Sisley" owned "more than forty pieces of property in Northeast Seattle, and have a bad reputation amongst both locals and city officials." The article further stated:

> In fifteen years these brothers have acquired 48 housing and building maintenance code violations, and have also been accused of racist renting policies. In his defense, Drake Sisley says that bad renters are to blame for the accumulating violations. No matter what the reason, the houses have become a well-known eye sore—but the neighborhood may not have to deal with them for much longer.

¶3 Following the publication of Shugerman's article, the Sisleys filed an action against Seattle School District for defamation. The Sisleys alleged in their complaint that *The Roosevelt News* had published a "false and libelous statement about Hugh Sisley" that had caused them damage.

The only statement in the article that the Sisleys contend is defamatory is the statement that the Sisley brothers "have also been accused of racist renting policies."

¶4 Seattle School District thereafter moved for summary judgment dismissal of the Sisleys' claim. In support of its motion for summary judgment, the school district submitted 11 articles previously printed in various Seattle newspapers and currently available on line via the Internet. Each of the articles concerned the deplorable conditions of the Sisley brothers' rental properties, referring to the brothers as among Seattle's worst "slumlords" and reporting on the numerous housing code violations on their properties. Many of the articles also described the Sisley brothers' relationship with Keith Gilbert, the founder of a white supremacist organization, who had been convicted of multiple racist hate crimes. According to these articles, Gilbert had worked for the Sisley brothers, managing many of their rental properties.

¶5 One of the articles submitted to the trial court, printed in the *Seattle Times* on March 9, 2007, stated that Gilbert is "a racist and a bigot" who "became the property manager for a number of rental homes owned by well-known Roosevelt-area landlords Hugh and Drake 'Ducky' Sisley." The article further reported that "[n]eighbors and former tenants said Gilbert was a bully who was known for his strong-arm tactics during evictions and other actions related to the rental properties." Similarly, a February 17, 2006 *Seattle Times* article, entitled "Two play key role in white supremacist's rise," quoted a former neighborhood association president as saying that the Sisley brothers gave Gilbert "a position of responsibility and allowed his thuggishness to essentially represent them." The article quoted a city official as stating that "Gilbert introduced a level of fear and intimidation into the relationships with tenants and with the neighbors." A *Seattle Weekly* article similarly quoted a city official as saying that the Sisley brothers and Gilbert like to "run roughshod over people constantly."

¶6 The Sisleys filed a motion in limine to exclude the 11 newspaper articles and Hugh Sisley's deposition testimony regarding those articles, asserting that the evidence was irrelevant, unduly prejudicial, and inadmissible as hearsay.

¶7 The trial court granted Seattle School District's motion for summary judgment, thus dismissing the Sisleys' claim. Although the trial court did not explicitly rule on the Sisleys' motion in limine, the court's order stated that it had "to the extent deemed relevant and admissible, reviewed the material submitted by the parties concerning [the] motion."

¶8 The Sisleys appeal.

## II

¶9 Prior to addressing the merits of this appeal, we must determine the proper scope of the record on appeal. The Sisleys contend that the trial court erred by not excluding the 11 newspaper articles—and Hugh Sisley's deposition testimony regarding those articles—submitted in support of Seattle School District's motion for summary judgment. They assert that this evidence is irrelevant, unduly prejudicial, and inadmissible as hearsay. We disagree.

¶10 "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Absent certain exceptions, "[a]ll relevant evidence is admissible." ER 402. The newspaper articles were relevant to multiple issues presented on summary judgment, includ-ing (1) whether the allegedly defamatory statement was false; (2) whether Seattle School District knew, or should have known in the exercise of reasonable care, that the statement was false; and (3) whether the Sisleys' reputations would not have been damaged but for the allegedly defamatory statement. *See Martin v. Roy*, 54 Mass. App. Ct. 642, 646, 767 N.E.2d 603 (2002) (holding that, in a defama-

tion action, newspaper articles were relevant to show that "any damage to [the plaintiff's] reputation could have been derived from those publications as opposed to" the allegedly defamatory statement challenged therein); *Swate v. Schiffers*, 975 S.W.2d 70, 77-78 (Tex. App. 1998) (holding that newspaper articles were admissible in a defamation action to show that the plaintiff "already had a terrible reputation" and that the statements complained about "were not even defamatory"). Because the newspaper articles tended to prove facts of consequence to the determination of the Sisleys' defamation claim, the articles were relevant and, thus, admissible.

¶11 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. In contending that the articles are unduly prejudicial, the Sisleys simply make a conclusory statement that this is so; they offer no argument regarding whether the danger of prejudice outweighs the probative value of the evidence. Where, as here, "the evidence is undeniably probative of a central issue in the case," "[t]he ability of the danger of unfair prejudice to substantially outweigh the probative force of [the] evidence is 'quite slim.'" *Carson v. Fine*, 123 Wn.2d 206, 224, 867 P.2d 610 (1994) (quoting *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1041 (11th Cir. 1988)). The Sisleys have not demonstrated that the danger of unfair prejudice outweighs the probative value of the newspaper articles.

¶12 Nevertheless, otherwise admissible evidence may be properly excluded as hearsay, which, absent the applicability of certain exceptions, is inadmissible. ER 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted*." ER 801(c) (emphasis added). The Sisleys contend that the newspaper articles are hearsay because they are "offered as evidence to prove that the School District's defamatory statement . . . is true." In so doing, the Sisleys misapprehend the meaning of

hearsay. It is the truth of the matter asserted within the newspaper articles themselves that determines whether the articles constitute inadmissible hearsay—*not* the truth of the allegedly defamatory statement at issue herein. Because the newspaper articles were not offered for the truth of the matter asserted therein, they are not inadmissible as hearsay. *See Swate*, 975 S.W.2d at 77 (rejecting defamation plaintiff's contention that newspaper articles were inadmissible as hearsay, as the articles were "hearsay only if offered to prove the truth of the matter asserted therein" and were "admissible as nonhearsay" if offered for other purposes).

¶13 To the extent that the trial court considered the newspaper articles and Hugh Sisley's related deposition testimony in ruling on Seattle School District's motion for summary judgment, the court did not err by so doing. Because this evidence is admissible, it is properly a part of the record that we consider on appeal.

### III

¶14 The Sisleys contend that the statement at issue herein—that the Sisley brothers had been "accused of racist renting policies"—is defamatory and, thus, that the trial court erred by dismissing their defamation claim on summary judgment. Seattle School District asserts, to the contrary, that summary judgment was appropriate because the Sisleys are unable to prove the elements of defamation, including falsity of the allegedly defamatory statement.[1] Because the Sisleys did not provide sufficient evidence to establish a prima facie case of falsity, the trial court correctly granted the school district's motion for summary judgment dismissal of their claim.

---

[1] This is one of several grounds on which the trial court granted the school district's motion for summary judgment dismissal of the Sisleys' claim. We need not address the other bases for dismissal in order to resolve this case and, therefore, do not do so.

¶15 We review de novo an order of summary judgment, performing the same inquiry as does the trial court. *Mohr v. Grant*, 153 Wn.2d 812, 821, 108 P.3d 768 (2005). Construing the evidence in the light most favorable to the nonmoving party, we determine "whether a reasonable jury could find in favor of that party." *Herron v. KING Broad. Co.*, 112 Wn.2d 762, 767-68, 776 P.2d 98 (1989). Our Supreme Court has recognized that, in defamation actions, "summary judgment plays a particularly important role." *Mohr*, 153 Wn.2d at 821. This is because " '[s]erious problems regarding the exercise of free speech and free press guaranteed by the First Amendment are raised if unwarranted lawsuits are allowed to proceed to trial. The chilling effect of the pendency of such litigation can itself be sufficient to curtail the exercise of these freedoms.' " *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981) (quoting *Tait v. KING Broad. Co.*, 1 Wn. App. 250, 255, 460 P.2d 307 (1969)).

¶16 Accordingly, in order to resist a defense motion for summary judgment, "the plaintiff has the burden of establishing a prima facie case on all four elements of defamation: falsity, an unprivileged communication, fault, and damages." *LaMon v. Butler*, 112 Wn.2d 193, 197, 770 P.2d 1027 (1989); *accord Mohr*, 153 Wn.2d at 822; *Camer v. Seattle Post-Intelligencer*, 45 Wn. App. 29, 36, 723 P.2d 1195 (1986). "The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists." *LaMon*, 112 Wn.2d at 197. Unless the plaintiff proffers evidence sufficient to establish a prima facie case, " 'the motion [for summary judgment] must be granted.' " *Mark*, 96 Wn.2d at 486 (quoting *Sims v. KIRO, Inc.*, 20 Wn. App. 229, 237, 580 P.2d 642 (1978)). With regard to the falsity of an allegedly defamatory statement, the question is not whether the statement is literally true but, rather, whether "the statement is substantially true" or "the gist of the story, the portion that carries the 'sting,' is true." *Mark*, 96 Wn.2d at 494. The party claiming defamation bears the

burden of proving falsity, *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 591, 943 P.2d 350 (1997), and thus bears a burden of production at the summary judgment stage.

¶17 Here, the "sting" of the allegedly defamatory statement is that the Sisley brothers had been *accused of* being racist landlords—not that they *are* racist landlords or that they had enacted formal rental policies that discriminated on the basis of race. *See Herron*, 112 Wn.2d at 769 ("The 'sting' of a report is defined as the gist or substance of a report when considered as a whole."). The evidence presented to the trial court, including the 11 Seattle newspaper articles and Hugh Sisley's deposition testimony related thereto, indicates that, in fact, the Sisley brothers *had been* accused of being racist landlords. The evidence demonstrated that Hugh Sisley had been accused of knowingly allowing Keith Gilbert, who had been criminally convicted of racist hate crimes, to manage many of the properties in the Roosevelt neighborhood. Sisley was also aware that Gilbert had been reported to have mistreated tenants on the rental properties. Numerous Seattle newspaper reports describing Gilbert as a "racist" or "bigot" linked Gilbert to the Sisley brothers, commenting on, for example, the "strong-arm tactics" used by Gilbert against tenants of the rental properties owned by the Sisley brothers. One such article stated that the Sisley brothers allowed Gilbert's "thuggishness to essentially represent them."

¶18 In response, the Sisleys provided no evidence—other than a bare allegation of falsity—to controvert the sting of the allegedly defamatory statement. In order to resist Seattle School District's motion for summary judgment, the Sisleys were required to proffer evidence sufficient to establish a prima facie case of each element of defamation; mere conclusory statements are insufficient. *Mark*, 96 Wn.2d at 486-87, 490. Here, the Sisleys' contention was that the allegedly defamatory statement was not literally true because there was no evidence that they had racist "renting

policies." But it is the "sting" of the allegedly defamatory statement, not its literal truth, that is at issue. Even drawing all reasonable inferences from the evidence in favor of the Sisleys, the record does not include evidence constituting a prima facie case of falsity of the "sting" of the allegedly defamatory statement. Because the Sisleys did not present evidence sufficient to establish a genuine issue of fact regarding the element of falsity, the trial court properly dismissed the defamation claim.

¶19 Affirmed.

BECKER and APPELWICK, JJ., concur.

Review denied at 176 Wn.2d 1015 (2013).