2017 DEC 11 A. 8: 55



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CARALYN VALDEMAN d/b/a )
INTEGRATED NW CONSTRUCTION, ) No. 75849-7-I
)
Appellant, ) DIVISION ONE
)
v. )
) UNPUBLISHED OPINION
ANDREA MARTIN, a single woman, )
)
Respondent. ) FILED: December 11, 2017
)
_____ )

LEACH, J. — Caralyn Valdeman appeals a summary judgment dismissing her claims against Andrea Martin for defamation, defamation per se, defamation by implication, and tortious interference with a business expectancy. Valdeman does not create a genuine issue of material fact about her defamation claims because Martin's statements were either substantially true or privileged opinion. In addition, Valdeman does not provide evidence of a business expectancy with which Martin interfered. We affirm.

## FACTS

Andrea Martin entered into a contract to remodel her home with Caralyn Valdeman's business, Integrated NW Construction. Integrated completed the remodel in August 2015. Martin e-mailed Integrated expressing her satisfaction with the remodel. She said, "I love my remodeled place!! You and your team did

a fantastic job! BRAVO." Valdeman claims that Martin also stated she found Integrated's employees to be "polite, respectful, professional and easy-going [sic]."

After completing Martin's remodel, Integrated learned that one of its employees, Timothy Manos, had misused its credit card. In December 2015, Integrated fired Manos. Valdeman later learned that Martin had developed a friendship with Manos and helped him establish his own contracting business.

Shortly after Integrated fired Manos, Martin called Valdeman about an Integrated employee named Richard Ohl. Martin claimed that Ohl had introduced himself as Richard Kennedy when they met at her home to initially discuss the project. She said that Ohl had signed her contract with Integrated using his alias. She told Valdeman that she had learned Ohl's true name and now knew that he was a convicted rapist and level II sex offender. Martin expressed concern that Integrated allowed a registered sex offender using an alias to enter its customers' homes, "including homes where women and children would be unattended, without notice to them of [his] registered sex offender identity." Martin claims Valdeman told her that she would not disclose Ohl's sex offender status to homeowners and that he was in the process of changing his name.

Valdeman characterizes Martin's phone call as "threatening" and acknowledges, "I am aware of Rich's past." Valdeman disputes, however, that Ohl signed his name as Richard Kennedy on Integrated's contract with Martin.

In February and March of 2016, Martin published a number of online reviews of Integrated. Martin published one review on Angie's List, two on online blog forums, and four on Yelp!. Yelp! removed three of Martin's reviews for violation of their online posting guidelines. Valdeman identifies these alleged defamatory statements from Martin's online posts:

[1] I will say that my experience with this company was awful.
[2] If I could give a zero rating, I would.
[3] The company is lacking in the areas of customer service, honesty and integrity.
[4] Nothing happened to me thank goodness.
[5] Reprehensible that a female business owner would knowingly give a convicted sex offender a position where he would be entering peoples' homes—homes that could have children in them.
[6] Upset me that a woman owner of a company was knowingly employing a convicted sex offender.
[7] My experience with Integrated NW Construction and Rich was very negative: dishonest, manipulative and deceitful.
[8] He signed my contract using Kennedy.
[9] He signed my contract with that signature.
[10] I had a negative experience with this company.

Valdeman sued Martin for defamation, defamation per se, defamation by implication, and tortious interference with a business expectancy. The trial court granted summary judgment in favor of Martin. Valdeman appeals.

## STANDARD OF REVIEW

This court reviews summary judgment orders de novo and performs the same inquiry as does the trial court.[1] Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[2] This means that a defamation plaintiff must show a genuine issue of material fact about each disputed element of her defamation claim.[3] Our Supreme Court has recognized that in defamation actions, "summary judgment plays a particularly important role."[4] "'Serious problems regarding the exercise of free speech and free press guaranteed by the First Amendment are raised if unwarranted lawsuits are allowed to proceed to trial. The chilling effect of the pendency of such litigation can itself be sufficient to curtail the exercise of these freedoms.'"[5]

---

[1] Life Designs Ranch, Inc. v. Sommer, 191 Wn. App. 320, 327, 364 P.3d 129 (2015), review denied, 185 Wn.2d 1022 (2016).

[2] Life Designs, 191 Wn. App. at 327; CR 56(c).

[3] Haueter v. Cowles Publ'g Co., 61 Wn. App. 572, 584, 811 P.2d 231 (1991).

[4] Mohr v. Grant, 153 Wn.2d 812, 821, 108 P.3d 768 (2005) (plurality opinion).

[5] Mohr, 153 Wn.2d at 821 (internal quotation marks omitted) (quoting Mark v. Seattle Times, 96 Wn.2d 473, 485, 635 P.2d 1081 (1981)).

## ANALYSIS

### I.    Defamation

Valdeman claims that Martin's statements constitute defamation and defamation per se.  Generally,  statements must be statements of fact, not opinion, to be defamatory.[6]  The four elements of defamation are falsity, an unprivileged communication, fault, and damages.[7]  To avoid summary judgment, the plaintiff must provide specific, material facts that would allow a jury to find that each element exists.[8]  But if the plaintiff shows the statements were sufficiently injurious to constitute defamation per se,[9] the court assumes damages and the plaintiff need not prove actual damages.[10]  We need only to address the falsity and privilege elements.

---

[6] Life Designs, 191 Wn. App. at 330.
[7] Life Designs, 191 Wn. App. at 330.
[8] Life Designs, 191 Wn. App. at 330.
[9] "A publication is defamatory per se (actionable without proof of special damages) if it '(1) exposes a living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office.'" Life Designs, 191 Wn. App. at 328 (quoting Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wn.2d 343, 353, 670 P.2d 240 (1983)).
[10] Maison de France, Ltd. v. Mais Oui!, Inc., 126 Wn. App. 34, 44-45, 108 P.3d 787 (2005).

### A. Whether the Statements Were False

The party claiming defamation has the burden of proving the statement is false.[11] If "'the statement is substantially true' or 'the gist of the story, the portion that carries the 'sting' is true,'" the statement is not false.[12]

Here, the "sting" of Martin's factual statements is true. Martin makes five factual statements that Valdeman contends are defamatory:

[4]    Nothing happened to me thank goodness.[13]

[5]    Reprehensible[14] that a female business owner would knowingly give a convicted sex offender a position where he would be entering peoples' homes—homes that could have children in them.

[6]    Upset me[15] that a woman owner of a company was knowingly employing a convicted sex offender.

[8]    [Ohl] signed my contract using Kennedy.

[9]    [Ohl] signed my contract with that signature.

Statement [4] is true; nothing happened to Martin. Statements [5] and [6] are also true. Ohl registered as a sex offender with the Pierce County Sheriff's Department. Valdeman acknowledges that she was aware of Ohl's status. In her declaration she says, "I am aware of Rich's past; those accusations are from years ago and certainly do not define who he is today." Valdeman states that

---

[11] Sisley v. Seattle Sch. Dist. No. 1, 171 Wn. App. 227, 234-35, 286 P.3d 974 (2012).

[12] Sisley, 171 Wn. App. at 234-35 (quoting Mark, 96 Wn.2d at 494).

[13] "Thank goodness" is opinion but is included for clarity.

[14] "Reprehensible" is opinion but is included for clarity.

[15] "Upset me" is opinion but is included for clarity.

Ohl's conviction involved nonviolent, consensual sex with a 15-year-old female, he served his time in prison, completed treatment, and is a valuable addition to Integrated.

Also substantially true is Martin's claim that Ohl is in a position to enter people's "homes that could have children in them." Although Valdeman contends that Integrated "take[s] precautions not to put ourselves or Rich in a situation that could be construed as threatening or harmful to anyone," Ohl entered Martin's home initially to discuss the project. This suggests that he also enters other customers' homes, possibly homes with children.

Valdeman asserts that statements [8] and [9] are false. While Martin claims that Ohl signed her contract with Integrated using the alias Richard Kennedy, Valdeman contends that the contract does not contain his signature. Although Valdeman disputes that Ohl signed the contract using his alias, she does not dispute that Ohl used a different name to try to conceal his identity. In addition, Martin claims Valdeman informed her that Ohl was "working on changing his name." The "sting" of the statements is whether Ohl concealed his identity, not whether he signed the contract using an alias. Because the portion of Martin's statements carrying the "sting" is true, the statements are not false. Thus, Valdeman does not create a genuine issue of material fact about the substantial truth of Martin's factual statements. Next, we determine whether

Martin's statements of opinion were unprivileged to decide if they may be subject to Valdeman's defamation action.

### B. Whether the Statements Were Unprivileged

Statements of "pure" opinion are nonactionable.[16] Because some opinions imply undisclosed defamatory facts, the Washington Supreme Court has adopted a three-part test to determine when a statement of opinion is actionable.[17] A trial court should consider "(1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts."[18]

When evaluating the first factor, a court should consider that people expect to find statements of opinion more often in certain contexts, like editorial pages or political debates.[19] In addition, the trial court should evaluate the entire communication and determine if "the speaker qualified the defamatory statement with cautionary 'terms of apparency.'"[20] In Life Designs Ranch, Inc. v. Sommer,[21] Michael Sommer created a website and uploaded allegedly defamatory content

---

[16] Dunlap v. Wayne, 105 Wn.2d 529, 538, 716 P.2d 842 (1986).

[17] Dunlap, 105 Wn.2d at 539.

[18] Dunlap, 105 Wn.2d at 539.

[19] Dunlap, 105 Wn.2d at 539.

[20] Dunlap, 105 Wn.2d at 539 (internal quotation marks omitted) (quoting Info. Control Corp. v. Genesis One Comput. Corp., 611 F.2d 781, 784 (9th Cir. 1980)).

[21] 191 Wn. App. 320, 325-26, 364 P.3d 129 (2015), review denied, 185 Wn.2d 1022 (2016).

about Life Designs, a substance abuse aftercare program for young adults. In evaluating the first factor, Division Three of this court explained, "The Internet is a medium where statements expressing opinions in the context of reviewing businesses and services are often found."[22] Thus, people reading Sommer's reviews would expect to find opinion, not fact. In addition, Division Three noted that Sommer used "'seems' as a word of apparency" in the "About Us" section of his website to indicate that he was not attempting to represent his website as factually accurate or portray it as Life Designs' website.[23] The medium and context in which Sommer published the allegedly defamatory comments therefore suggested that his statements were nonactionable opinion about the quality of Life Designs' services.[24]

Here, Martin's statements of opinion are as follows:

[1]     I will say that my experience with this company was awful.
[2]     If I could give a zero rating, I would.
[3]     The company is lacking in the areas of customer service, honesty and integrity.
[7]     My experience with Integrated NW Construction and Rich was very negative: dishonest, manipulative and deceitful.
[10]    I had a negative experience with this company.

Valdeman apparently claims that the medium and context in which Martin published these statements support that they are actionable opinion. She

---

[22] Life Designs, 191 Wn. App. at 331.
[23] Life Designs, 191 Wn. App. at 331.
[24] Life Designs, 191 Wn. App. at 331.

asserts that Martin published her reviews on "website[s] for finding contractors for remodeling work directly related to Integrated's business relationship." Indeed, Martin posted one review on Angie's List, an online source for finding and reviewing contractors among other home services providers; three reviews on Yelp!, another online source for reviewing businesses; and two reviews on online blog forums. But contrary to Valdeman's assertion, solely because individuals seeking to hire contractors may read Martin's reviews does not make the statements unprivileged. In fact, according to Life Designs, posting reviews on the Internet where individuals often find reviews of businesses and services means people are more likely to interpret statements like Martin's as opinion. In addition, Martin qualifies her statements with "I" or "my," which are terms of apparency that signal the statements are her personal opinion. Thus, both the medium and context support that Martin's statements are nonactionable opinion.

"Second, the nature of the audience is important."[25] The court should consider if "the audience expected the speaker to use exaggeration, rhetoric, or hyperbole" to determine if the audience should be aware of the "subjective biases of the speaker."[26] In Life Designs, the audience consisted of the people researching Life Designs.[27] Sommer's website read, "'Thinking about going to or

---

[25] Dunlap, 105 Wn.2d at 539.
[26] Dunlap, 105 Wn.2d at 539.
[27] Life Designs, 191 Wn. App. at 332.

sending someone you love to Life Designs Ranch?? Read this first."[28] Thus, the audience should have expected a review as opposed to an official website.[29]

Similar to the audience in Life Designs, Martin's audience here is the individuals researching Integrated. Valdeman asserts that Integrated's existing and prospective customers "are not surely expecting or prepared to hear bad things or complaints against Integrated." On the contrary, negative and positive reviews subject to reviewers' biases are exactly what an audience researching reviews on Angie's List and Yelp! expects to find. Current and future customers' understanding that Martin's posts represent one person's subjective evaluation of Integrated supports that her statements are nonactionable opinion.

"The third and perhaps most crucial factor to consider is whether the statement of opinion implies that undisclosed facts support it."[30] Opinion is actionable only if it "implies the allegation of undisclosed defamatory facts as the basis for the opinion."[31] "A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how

---

[28] Life Designs, 191 Wn. App. at 332.
[29] Life Designs, 191 Wn. App. at 332.
[30] Dunlap, 105 Wn.2d at 539-40.
[31] Dunlap, 105 Wn.2d at 538 (quoting RESTATEMENT (SECOND) OF TORTS § 566 (AM. LAW INST. 1977)).

-11-

derogatory it is."[32]  For this reason, our Supreme Court has held that "[a]rguments for actionability disappear when the audience members know the facts underlying an assertion and can judge the truthfulness of the allegedly defamatory statement themselves."[33]

In Life Designs, Division Three held that Sommer based his statements on disclosed facts or made subjective statements of opinion that were nonactionable.[34]  For example, Sommer characterized Life Designs' "visual experience" as being rife with pine trees.[35]  The court concluded that Life Designs' online description of itself as an undiscovered recreational area and online pictures of its clients in its natural setting provided a basis for Sommer's criticism of the scenery.[36]  Sommer also criticized the staff for lacking compassion.[37]  In response, the court held that while Life Designs' website did not address the staff's compassion, "compassion is a subjective determination and is thus opinion."[38]

Here, Valdeman claims that Martin should have included the nature of her relationship with Timothy Manos in her reviews.  Valdeman learned that Martin

---

[32] Dunlap, 105 Wn.2d at 540 (quoting RESTATEMENT (SECOND) OF TORTS § 566 cmt. c).
[33] Dunlap, 105 Wn.2d at 540.
[34] Life Designs, 191 Wn. App. at 332-33.
[35] Life Designs, 191 Wn. App. at 332-33.
[36] Life Designs, 191 Wn. App. at 332-33.
[37] Life Designs, 191 Wn. App. at 333.
[38] Life Designs, 191 Wn. App. at 333.

had helped Manos establish his own contracting business after Integrated fired him. She contends that Martin posted negative reviews of Integrated because of her ulterior motive to help Manos compete with Integrated. An ulterior motive, however, does not mean Martin's negative reviews implied that undisclosed defamatory facts formed the bases of her opinions. Martin's statements that her experience with Integrated was "awful," "negative," and worth a "zero rating," that Integrated lacks in "customer service, honesty, and integrity," and that Ohl was "dishonest, manipulative and deceitful," are subjective determinations that do not imply undisclosed facts.

All three factors thus indicate that Martin's statements of opinion were nonactionable. Because Martin's factual statements were substantially true and Martin's statements of opinion were nonactionable, no genuine issues of material fact exist about whether Martin's statements were false or unprivileged. These issues are dispositive. This means we need not address fault, damages, or defamation per se. The trial court properly dismissed Valdeman's defamation and defamation per se claims.

## II. Defamation by Implication

Valdeman contends that Martin's statements resulted in defamation by implication because Martin both juxtaposed a series of facts so as to imply a defamatory connection between them and created a defamatory implication by

omitting facts. Washington, however, recognizes only one cause of action for defamation by implication, defamation by implication as a result of omitted facts but not as a result of juxtaposition of truthful statements alone.[39] Consistent with Division Two, we hold that "a plaintiff may not base a defamation claim on the negative implication of true statements."[40] We therefore do not consider Valdeman's claim for defamation by implication due to juxtaposition of truthful statements and consider only her claim for defamation by implication as a result of omitted facts.

To establish defamation by implication, the plaintiff must prove all elements of defamation.[41] For the element of falsity, the plaintiff must show that "the communication left a false impression that would be contradicted by the inclusion of omitted facts."[42] The portion of the statement that carries the "sting"

---

[39] In Mohr, a plurality opinion by the Washington Supreme Court, the three justices in the plurality, 153 Wn.2d at 815-30 (lead opinion of Fairhurst, J.), and the three justices who concurred in part and dissented in result, 153 Wn.2d at 831-34 (opinion concurring in part and dissenting in result of Chambers, J.), recognized a cause of action for defamation by implication due to omitted facts. The remaining three justices concurred but disagreed that Washington should recognize defamation by implication, 153 Wn. 2d at 830-31 (concurring opinion of Alexander, C.J.). Thus, six justices held that Washington law recognizes defamation by implication due to omitted facts. See also Yeakey v. Hearst Commc'ns, Inc., 156 Wn. App. 787, 792, 234 P.3d 332 (2010) (interpreting Mohr as recognizing only defamation by implication due to omitted facts).

[40] Yeakey, 156 Wn. App. at 792.

[41] Corey v. Pierce County, 154 Wn. App. 752, 761-62, 225 P.3d. 367 (2010).

[42] Mohr, 153 Wn.2d at 827.

must be contradicted by the omitted facts; "[m]erely omitting facts favorable to the plaintiff or facts that the plaintiff thinks should have been included does not make a publication false and subject to defamation liability."[43] "Arbitrariness and insensitivity are not the test."[44]

Valdeman asserts that because Martin criticized Integrated for its lack of customer service, honesty, and integrity, Martin also should have included her review reflecting positively on Integrated's workmanship. Valdeman suggests that Martin should have included the substance of the e-mail Martin sent Integrated stating, "I love my remodeled place!! You and your team did a fantastic job! BRAVO." First, Martin's negative reviews about the quality of workmanship are privileged because they are pure opinion and therefore cannot provide the basis of a defamation action. Second, the "sting" of Martin's statements does not relate to Integrated's workmanship but, rather, to Ohl's sex offender status. The "sting" is that Integrated knowingly sent a registered sex offender to a customer's home without disclosing his status. Martin's positive reviews of Integrated's workmanship would not contradict this. Thus, no issue of material fact exists about Valdeman's defamation by implication claim. The trial court properly granted summary judgment.

---

[43] Mohr, 153 Wn.2d at 825, 827.
[44] Mohr, 153 Wn.2d at 827.

### III. Tortious Interference with a Business Expectancy

Last, Valdeman makes a tortious interference with a business expectancy claim. Tortious interference has five elements: (1) the existence of a valid business expectancy, (2) that defendant had knowledge of that expectancy, (3) an intentional interference inducing or causing a breach or termination of the expectancy, (4) that defendant interfered for an improper purpose or used improper means, and (5) resultant damage.[45]

Valdeman claims that because Martin published allegedly defamatory statements and attacked Integrated's professional integrity for the purpose of helping Manos's business, Martin damaged Integrated's reputation and improperly interfered with Integrated's business expectancy. But Valdeman offers no evidence that Martin's statements interfered with any Integrated business expectancy or damaged Integrated. Thus, no genuine issue of material fact exists, and the trial court properly dismissed the claim.

### IV. Appellate Costs

Valdeman asks this court to deny Martin an award of appellate costs should Martin prevail on review. This court generally awards appellate costs to the substantially prevailing party on review.[46] Because Martin is the substantially prevailing party, we decline Valdeman's request.

---

[45] Life Designs, 191 Wn. App. at 337.
[46] RAP 14.2.

## CONCLUSION

Valdeman does not create a genuine issue of material fact about her claims for defamation, defamation per se, defamation by implication, and tortious interference with a business expectancy. We affirm the trial court.

_Leach, J._

WE CONCUR:

_Mann, J._                                    _Trickey, A.C.J._