IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| PAULA STEVEN, individually, and as a parent and guardian of DONTE MAXIE, a minor, | ) ) ) ) | No. 82042-7-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| FEDERAL WAY SCHOOL DISTRICT, | ) ) | UNPUBLISHED OPINON |
| Respondent. | ) ) ) | |

VERELLEN, J. — Paula Steven challenges the trial court's grant of summary judgment in favor of the Federal Way School District. Steven argues that she established a prima facie case sufficient to proceed to trial on her claims for discrimination, negligence, retaliation, and loss of consortium. But because our review is limited to the evidence that was "called to the attention of the trial court," and Steven relies upon "speculation" and "bare assertions," summary judgment was proper.

Therefore, we affirm.

## FACTS

In 2016, Paula Steven's son, Donte Maxie, was a student at Lakeland Elementary School located in the Federal Way School District (the District). After Donte started third grade, Steven complained he "was the victim of selective and

discriminatory" practices by the District.[1]  Specifically, Donte told Steven that he was being treated differently at school than other "non-Black" students.[2]  As a result, between 2016 and 2018, Steven sent various letters to office administrators at Lakeland asserting multiple allegations of unfair treatment.

On June 21, 2019, Steven filed a complaint against the District on behalf of herself and her son Donte alleging discrimination, negligence, retaliation, and loss of consortium.  Steven's primary allegation is that Donte "was the victim of selective and discriminatory . . . attendance recording practices" which "generated chronic absence truancy letters and mandatory attendance conferences."[3]  All claims against the District on behalf of Donte have been settled.

In September 2020, the District filed for summary judgment on Steven's individual claims.  At oral argument, the trial court stated, "I have lots of letters from you and declarations from you showing that you are reaching out to people, but what I don't have are anything that show definitively that [Donte] was treated differently than other kids, or that you were treated different than other parents."[4]  The court granted the District's summary judgment motion.

Steven appeals.

---

[1] Clerk's Papers (CP) at 737.

[2] CP at 739.

[3] CP at 736-48.

[4] Report of Proceedings (RP) (Oct. 9, 2020) at 27-28.

ANALYSIS

On summary judgment, "our review is limited to evidence and issues called to the attention of the trial court."[5] The order granting or denying summary judgment "shall designate the documents and other evidence" that the trial court reviewed.[6] And the nonmoving party cannot rely upon materials outside of those "called to the attention of the trial court" to establish that genuine issues of material fact exist.[7]

Here, on summary judgment, the trial court considered the following: (1) the District's motion for summary judgment, (2) Steven's opposition to the District's motion for summary judgment, (3) Steven's declaration in opposition to the District's motion for summary judgment, including exhibits 1 to 22, (4) the District's reply in support of its motion for summary judgment, (5) the District's praecipe,[8] and (6) oral argument.

We review an order granting summary judgment de novo and perform the same inquiry as the trial court.[9] "In conducting this inquiry, we must view all facts and

---

[5] Tacoma S. Hospitality, LLC v. Nat'l Gen. Ins. Co., No. 55168-3-II, slip op. at 10 (Wash. Ct. App. 2021), https://www.courts.wa.gov/opinions/pdf/D2%2055168-3-II%20Published%20Opinion.pdf (citing RAP 9.12).

[6] Green v. Normandy Park, 137 Wn. App. 665, 678, 151 P.3d 1038 (2007) (quoting RAP 9.12).

[7] See id.

[8] The court mislabeled the "praecipe" on its order granting the District summary judgment as "plaintiff's praecipe" instead of "defendant's praecipe." CP at 840, 854; Resp't's Br. at 6.

[9] Sisley v. Seattle Sch. Dist. No. 1, 171 Wn. App. 227, 234, 286 P.3d 974 (2012) (citing Mohr v. Grant, 153 Wn.2d 812, 821, 108 P.3d 768 (2005)).

reasonable inferences in the light most favorable to the nonmoving party."[10] But the nonmoving party bears the burden of establishing that a prima facie case exists on all elements of their alleged claims.[11] The nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value."[12] And "bare assertions" will not defeat a summary judgment motion.[13] Instead, the nonmoving party "must set forth specific facts showing that genuine issues of material fact exist."[14]

First, Steven argues that she and Donte were subjected to discrimination by Lakeland employees, teachers, and staff who all "openly treated both [her] and Donte who were Black less favorable than white students and parents."[15]

The Washington Law Against Discrimination provides that the state "shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting."[16] To establish a prima facie

---

[10] Seiber v. Poulsbo Marine Ctr., Inc., 136 Wn. App. 731, 736, 150 P.3d 633 (2007).

[11] Sisley, 171 Wn. App. at 234.

[12] Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986) (citing Dwinell's Cent. Neon v. Cosmopolitan Chinook Hotel, 21 Wn. App. 929, 587 P.2d 191 (1978)).

[13] SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 140, 331 P.3d 40 (2014) (quoting CR 56(e); Bernal v. Am. Honda Motor Co., 87 Wn.2d 406, 412, 553 P.2d 107 (1975)).

[14] Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002) (citing CR 56; Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989); Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001)).

[15] Appellant's Br. at 50.

[16] RCW 49.60.400(1).

case of discrimination the plaintiff must show: (1) the plaintiff is a member of a protected class, (2) the defendant's place of business is a place of public accommodation, (3) the plaintiff was treated differently than similarly situated individuals outside the plaintiff's protected class, and (4) the plaintiff's protected status was a substantial factor in causing the discrimination.[17]

Here, Steven's discrimination claim focuses on her allegations that she and Donte were treated differently than "non-Black" parents and students regarding assertions by the District of "chronic tardies."[18]  Specifically, in her opening brief, Steven alleges that she "provided comparators" and that based upon those "comparators," she established a causal connection between her and Donte's status as a Black parent and student and the disparate treatment they received.[19]

In support of her contention, Steven offers general assertions in her opening brief that she spoke with a Caucasian parent who always arrived to Lakeland with her son after Steven and Donte, and the Caucasian parent confirmed that her and her

---

[17] See Kirby v. City of Tacoma, 124 Wn. App. 454, 468, 98 P.3d 827 (2004); Fell v. Spokane Transit Auth., 128 Wn.2d 618, 637, 911 P.2d 1319 (1996); Hartleben v. Univ. of Washington, 194 Wn. App. 877, 883-84, 378 P.3d 263 (2016).

[18] Appellant's Br. at 21-32.  Steven also alleges that she and Donte were subjected to discrimination at Lakeland because the faculty failed to call on Donte to answer academic questions because he was Black, the faculty incorrectly had Donte reading at a first grade level, a faculty member pulled the back of Donte's jersey when he was running in the hallway, and the faculty made Donte watch a movie that was discriminatory.  But those claims were the subject of the settlement.  And in her deposition, Steven acknowledged that the District corrected Donte's attendance records but asserted that the "big issue" was that she "felt like [the attendance practices were] discriminatory" and that Donte and her were treated differently than other "nonwhite students and parents," and that they were being "racially profiled" because of the way they entered the school.  CP at 831-32.

[19] Appellant's Br. at 52.

son "had not been subjected to her son's attendance being changed . . . nor was she in receipt of notices regarding her son's attendance, [and] she also did not receive emails [sent] to her son's teacher [instructing the teacher] to monitor her and her son in the mornings."[20]  But Steven's only citations to the record in support of her alleged "comparator" are to letters she sent to various administrators at Lakeland recounting her conclusory allegations of disparate treatment and references to documents that were not before the trial court on summary judgment.[21]  Because Steven's claimed "comparator evidence" is based upon "vague assertions" and "speculation," she fails to provide specific facts supporting a prima facie case of her discrimination claim.

Second, Steven alleges that the District acted negligently in responding to and investigating her complaints of discrimination.  To establish a prima facie case of negligence, the plaintiff must show: (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, (3) that injury to the plaintiff resulted, and (4) that the defendant's breach proximately caused the plaintiff's injury.[22]

---

[20] Appellant's Br. at 7.

[21] Appellant's Br. at 9, 13-15, 17.  The majority of the exhibits Steven attaches to her declaration are letters she sent to various administrators at Lakeland detailing her allegations of disparate treatment.  But again, the letters present no evidence of her alleged "comparator" to support her contention that any disparate treatment actually occurred.  For example, in her letter to the principal and the interim principal on October 25, 2016, Steven alleges, "When I initially contacted you I did not just believe the staff treated me and my son improperly regarding tardies.  I knew for a fact that we were/are being subjected to unfair education practices, racially profiled, and discrimination.  They also singled us out and treated us differently than other non-Black students and parents."  CP at 782.  See also CP at 779, 785, 800, 807.

[22] Seiber, 136 Wn. App. at 738 (citing Hoffstatter v. City of Seattle, 105 Wn. App. 596, 599, 20 P.3d 1003 (2001)).

Here, the District interpreted Steven's negligence claim as a negligent investigation claim, but at summary judgment, the trial court dismissed Steven's negligent investigation claim based upon her own "affirmation" that negligent investigation was not the type of negligence claim she intended to present.[23] Instead, in her opening brief, Steven contends that the District failed to "exercise ordinary care [in their actions] toward" her and Donte and that the District did not act as a "careful person" would have "under the same or similar circumstances."[24] In her reply brief, she clarifies that she is alleging that the District failed to take prompt and effective steps necessary to end the ongoing harassment she and Donte experienced.[25] But Steven does not establish any questions of fact regarding a breach of duty by the District. And because she provides no citations to the record and instead relies only on "bare assertions," Steven again fails to present specific facts to establish a prima facie case of her negligence claim.[26]

Steven also argues that she established a prima facie case of retaliation.[27] But, on this record, there are no facts to establish any adverse treatment of Steven. And any facts supporting the claim that the District retaliated against Donte were the subject of the settlement.

---

[23] RP (Oct. 9, 2020) at 9-10, 23-24.

[24] Appellant's Br. at 51-52.

[25] Appellant's Reply Br. at 22.

[26] Steven also argues that the trial court failed to rule on her motion for discovery sanctions. Appellant's Br. at 54-55. But she fails to establish she preserved this issue by alerting the trial court that the motion had not been resolved and does not offer any meaningful argument that sanctions were warranted.

[27] Appellant's Br. at 51-52.

Additionally, Steven contends she established a prima facie case of loss of consortium under RCW 4.24.010 based upon her general allegations of emotional injury.[28] But because this claim is not supported by any tangible evidence or expert opinions regarding the existence of an injury or causation, it fails.

Steven further claims that the trial court erred in denying her motion for reconsideration.[29] But because her argument on appeal regarding her motion for reconsideration is a one sentence assertion, her argument is inadequately briefed and insufficiently argued.[30]

Therefore, we affirm.

WE CONCUR:

---

[28] Appellant's Br. at 51-52.

[29] Appellant's Br. at 2, 53.

[30] See Appellant's Br. at 2; RAP 10.3(a)(6).