154 P.3d 230 (2007)
Stephen CLAPP and Sequim Valley Ranch, Appellants,
v.
OLYMPIC VIEW PUBLISHING CO., LLC, Respondent.
No. 34473-4-II.
Court of Appeals of Washington, Division 2.
January 17, 2007.
Publication Ordered March 20, 2007.
*232 Rodney Q. Fonda, Melissa O'loughlin White, Cozen O'Connor, Seattle, WA, for Appellants.
Bruce Edward Humble Johnson, Attorney at Law, Seattle, WA, for Respondent.
Signe H Brunstad, University of Wash. School of Law, William H Gates Hall, Seattle, Amicus Curiae on behalf of Allied Daily Newspapers of Wash., The Washington Newspaper Publishers, Washington Coalition for Open Government, The Evergreen Freedom Foundation, The Center for Justice.
ARMSTRONG, J.
¶ 1 Stephen Clapp and Sequim Valley Ranch appeal the dismissal of their defamation action against Olympic View Publishing. The defamation action centered on Olympic View's publication of a Sequim Valley employee's allegations, contained in a petition for a protective order, that Clapp had pressured employees to commit perjury in support of Sequim Valley in another lawsuit. The trial court ruled that the fair reporting privilege protected Olympic View's publication of any possibly defamatory statements the employee made in her pleadings. Because the allegedly defamatory article is an accurate and fair abridgement of the underlying court documents, the trial court did not err in dismissing the action. Accordingly, we affirm.

FACTS
¶ 2 Stephen Clapp and Sequim Valley Ranch sued Olympic View Publishing Company, the publisher of the Sequim Gazette, alleging defamation arising from an article the Gazette published in October 2004.
¶ 3 Marie Barnett, a former Sequim Valley employee, petitioned Clallam County District Court for a protection order against Clapp in September 2004. Barnett alleged that Clapp, owner of Sequim Valley, had attempted to coerce her into committing perjury, that he had "stormed into [her] office" and "trampled" her 11-month-old son during an incident the previous April, that he had engaged in similar behavior on two other occasions, and that she was afraid of how he would react to her resignation from the Sequim Valley. Clerk's Papers (CP) at 45-46.
¶ 4 In support of her petition, Barnett submitted two letters she had written to Clapp in response to the April incident, one with what appears to be a handwritten response from Clapp. She also submitted a resignation letter from herself and four other Sequim Valley employees, alleging that by asking them to "commit perjury or be fired," Clapp had "[c]onstructively [d]ischarged" *233 them. CP at 49. Finally, she submitted two letters purportedly from Clapp to all Sequim Valley employees.
¶ 5 The first letter described a pending lawsuit filed by Clapp and stated that the employees had to "decide before [Clapp's lawyers] come whether you consider yourself part of a ranch or whether you think you can find a better employer, pay, benefits, perks, flexibility and working conditions that call upon your skills and talents somewhere else on the Peninsula." CP at 50-51. The second contained the following passages:
You needn't concern yourself that what you say may not be a [sic] accurate or even that subsequently it might be proved false; you are asked only to testify to what you believe to the best of your knowledge is true. . . . If we find that you, being the witnesses the court would expect the most affirmative and full testimony from, that your equivocation or unwillingness to become involved on behalf of Sequim Valley Ranch damages the case our legal team has worked hard to build, then I will have to make the determination whether it is workable for me to run the ranch with staff that can't be counted on when the ranch really needs them.
CP at 53.
¶ 6 The Gazette published an article describing Barnett's petition and the supporting documents the following month under the headline, "Lavender farm employees quit," and the sub-headline, "Allege owner strong-armed them to commit perjury." CP at 34. The article related Barnett's allegation that Clapp "trampled" her child. CP at 34. It quoted extensively from the two letters Clapp purportedly wrote, including the portions quoted above, but omitting the portion of the second letter that reads, "You are asked only to testify to what you believe to the best of your knowledge is true." CP at 34. The article stated that neither Clapp nor his attorneys returned requests for comment but that two other former Sequim Valley employees verified that the letters came from Clapp.
¶ 7 In a November 2004 hearing, after publication of the Gazette article, Barnett stated that Clapp did not actually touch her son in the April incident, although she still characterized it as a "trampling." CP at 24. She stated that Clapp slammed open a door near the child and stepped over the child to throw something at her.
¶ 8 The Clallam County Superior Court granted Olympic View's CR 12(b)(6) motion to dismiss,[1] ruling that the fair reporting privilege protected Olympic View's publication of the article. In its memorandum opinion, the court explained that the article "clearly" covered an official judicial proceeding and that it was a fair abridgement of the records filed by Barnett. CP at 10-12.
¶ 9 The principal issue is whether the Gazette's report was an accurate and fair abridgement of the court documents and thereby protected under the fair reporting privilege.

ANALYSIS
¶ 10 A court should dismiss a claim under CR 12(b)(6) only if the plaintiff is not entitled to relief on a claim under any set of facts. Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994). We review a CR 12(b)(6) ruling de novo. State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm., 135 Wash.2d 618, 623, 957 P.2d 691 (1998).

I. THE FAIR REPORTING PRIVILEGE
¶ 11 To establish a defamation claim, the plaintiff must show, among other elements, that the statements were not privileged. Mark v. Seattle Times, 96 Wash.2d 473, 486, 635 P.2d 1081 (1981). Washington affords news media defendants a privilege for reporting on defamatory statements contained in official proceedings and records. *234 Alpine Indus. Computers, Inc. v. Cowles Publ'g Co., 114 Wash.App. 371, 382, 57 P.3d 1178 (2002).
A. Scope of the Privilege
¶ 12 Clapp and Sequim Valley contend that the fair reporting privilege does not apply to the Gazette article because the Gazette reported "the allegations of a disgruntled employee which had simply been filed with the court." Br. of Appellant at 8. This argument hinges on the fact that the article reported on pleadings[2] where the court had not yet taken any action.
¶ 13 Olympic View urges us not to consider the argument because Clapp and Sequim Valley did not raise it before the trial court. RAP 2.5(a).
¶ 14 Generally, we do not consider arguments a party first makes on appeal. RAP 2.5(a); State v. Williams, 137 Wash.2d 746, 749, 975 P.2d 963 (1999). But even if we were to consider it, Clapp's and Sequim Valley's claim that the privilege does not apply fails. In O'Brien v. Tribune Publishing Co., 7 Wash.App. 107, 117, 499 P.2d 24 (1972), we held that, because the filing of a pleading is a public and official act in the course of judicial proceedings, the fair reporting privilege attaches to pleadings even if the court has yet to act on them. O'Brien, 7 Wash.App. at 117, 499 P.2d 24 (citing Am. Dist. Tel. Co. v. Brink's Inc., 380 F.2d 131 (7th Cir.1967); Johnson v. Johnson Publ'g Co., 271 A.2d 696 (D.C.App.1970); Campbell v. New York Evening Post, 245 N.Y. 320, 157 N.E. 153 (1927)). Although Clapp attempts to distinguish O'Brien because it involved a public figure, the argument is not persuasive. Whether a person is a public figure determines the level of fault a defamation plaintiff must prove. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wash.2d 343, 352, 670 P.2d 240 (1983). The issue here is privilege, not fault.
B. Application of the Privilege
¶ 15 The fair reporting privilege serves the public's interest in obtaining information about official proceedings and public meetings. Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 179, 736 P.2d 249 (1987). The fair reporting privilege attaches to a report on official proceedings or records that (1) attributes the report to the official record, and (2) is accurate and complete or a fair abridgement of the record. Alpine Indus., 114 Wash.App. at 384, 57 P.3d 1178. Clapp and Sequim Valley contend that the Gazette article is not a fair abridgement of the Barnett filings, referring specifically to two portions of the article.
¶ 16 In the first challenged portion, the article relates Barnett's allegation that Clapp "trampled" her 11-month-old child. CP at 34, 45. Barnett later clarified that Clapp did not actually touch her child during the incident. Instead, Clapp slammed open Barnett's office door "right next to" where her son was playing on the floor, then "stepped over" the child to throw something at Barnett. CP at 24.
¶ 17 Clapp and Sequim Valley do not show how the report of Barnett's trampling allegation is inaccurate or an unfair abridgement of the record. The article directly and accurately quotes Barnett's petition and attributes the allegation to the petition. Compare CP at 34 (article) ("In the incident, according to court papers, Clapp swore and yelled at Barnett, and `trampled [her] then 11-month-old son.'") (alteration in original), with CP at 45 (petition) ("In April he stormed into my office-slamming the door open into the wall screaming profanities at me-throwing a fax (paper) at me and trampled my then 11 month old son."). That Barnett ultimately clarified that by "trampling" she did not mean a physical assault, is immaterial to whether the privilege applied when the Gazette published the article. See O'Brien, 7 *235 Wash.App. at 118, 499 P.2d 24. That question turns upon whether the Gazette fairly and accurately summarized the pleadings in the case, not on whether Barnett later clarified what she meant.
¶ 18 In the second challenged portion, the article quotes from one of Clapp's letters attached to Barnett's petition as follows: "You needn't concern yourself that what you say may not be a [sic] accurate or even that it might subsequently be proven false." CP at 34. In the actual attachment to Barnett's petition, this portion of the sentence ends with a semicolon and the sentence continues: "you are asked only to testify to what you believe to the best of your knowledge is true." CP at 53.
¶ 19 Clapp and Sequim Valley argue that by omitting the second portion of the sentence, the article "completely reversed the meaning of the sentence." Br. of Appellant at 5. They reason that a reader of the sentence as printed in the article would conclude that Clapp was in fact trying to get his employees to commit perjury, while a reader of the sentence in the pleadings would conclude that he was asking them to tell the truth.
¶ 20 A report is a fair abridgement of an official record if, reading the article as a whole, it "conveys to the persons who read it a substantially correct account of the proceedings." Alpine Indus., 114 Wash.App. at 386, 57 P.3d 1178 (quoting RESTATEMENT (SECOND) OF TORTS § 611 cmt. f (1977)). Thus, a publisher must not edit and delete a report so as to misrepresent the proceeding and thus mislead the reader. Alpine Indus., 114 Wash.App. at 386, 57 P.3d 1178.
¶ 21 The purpose of the Gazette article was to report on Barnett's and the other former employees' allegations, not to report on the truth or falsity of the allegations themselves. The records that the article reported on alleged that Clapp was "trying to intimidate [Barnett] into committing perjury," and asking the former employees "to commit perjury or be fired." CP at 45, 49. Thus, reporting the petition's support for the allegations was a correct account of the records. And the Gazette reporter was under no obligation to independently verify the allegations against Clapp in Barnett's petition. See Mark, 96 Wash.2d at 493, 635 P.2d 1081.
¶ 22 Moreover, we do not share Clapp's belief that omitting the second part of the sentence completely reversed the sentence's meaning. The fair sense of the entire paragraph is that (1) Clapp expected his employees to affirmatively support Sequim Valley in the lawsuit without equivocation, and if they did not, he might fire them, and (2) the employees did not need to worry about whether their testimony was accurate or even later proven false because they would be asked to testify only to what they believed to be true. We do not read this, as Clapp does, to be an exhortation to tell the truth. Rather, Clapp seems to be reassuring his employees that they can give strongly supportive testimony without fear of criticism because they will be asked to testify not to what they know to be true, but only to what they believe to be true.
¶ 23 And even if we accept that the omitted phrase offers some evidence that Clapp told his employees to tell the truth, its omission does not materially change the gist of the pleadings. In other pleadings, Barnett flatly charged that Clapp instructed his employees to commit perjury. We conclude that the article fairly summarizes Barnett's pleadings, all that it purported to do. And to finely parse the sentence, as Clapp and Sequim Valley urge, would largely destroy the First Amendment protection of the fair reporting privilege. The news media should not have to worry about how a court would rewrite or edit the article in search of a perfect balance between the litigants. Our role in applying the fair reporting privilege is simply to ask whether the article in general fairly summarizes the court documents. As we have explained, it does.

II. ATTORNEY FEES
¶ 24 Olympic View asks us to award it attorney fees for defending Clapp's and Sequim Valley's appeal under RAP 18.9. It maintains that their appeal, besides being meritless, runs contrary to settled law and challenges the trial court's dismissal without any factual basis for doing so and is therefore frivolous.
*236 ¶ 25 In determining whether to impose sanctions under RAP 18.9, we consider:
(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.
Tiffany Family Trust Corp. v. City of Kent, 155 Wash.2d 225, 241, 119 P.3d 325 (2005) (quoting Green River Cmt'y Coll. Dist. No. 10 v. Higher Educ. Pers. Bd., 107 Wash.2d 427, 442-43, 730 P.2d 653 (1986)).
¶ 26 Clapp and Sequim Valley did set forth debatable issues as to whether the fair reporting privilege applies. We decline to award sanctions under RAP 18.9.
¶ 27 Affirmed.
We concur: BRIDGEWATER, P.J., and PENOYAR, J.
NOTES
[1] Olympic View submitted the article and Barnett's petitions as exhibits to its motion to dismiss. Citing several federal cases, Olympic View argued that because the complaint made allegations about the contents of these documents, the court could properly consider them without converting Olympic View's CR 12(b)(6) motion into a motion for summary judgment. Clapp and Sequim Valley agreed that the court could properly consider the documents. The court did not explicitly rule on this issue, but did consider the exhibits in making its ruling.
[2] Barnett's petition and supporting documents, filed under oath, commenced an action for an order of protection against Clapp. See RCW 10.14.040. Accordingly, this court may treat the documents as pleadings. See Beckman v. Dep't of Soc. & Health Servs., 102 Wash.App. 687, 692 n. 2, 11 P.3d 313 (2000) ("Pleadings are written allegations of what is affirmed on one side, or denied on the other, disclosing to the court or jury having to try the cause the real matter in dispute between the parties.") (quoting Tiffin v. Hendricks, 44 Wash.2d 837, 843, 271 P.2d 683 (1954)).