**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SIDDHARTH JHA, | DIVISION ONE |
| Respondent, | No. 83768-1-I |
| v. | PUBLISHED OPINION |
| VARISHA MAHMOOD KHAN and YASSIR ANWAR JAMAL, wife and husband, | |
| Appellants. | |

DWYER, J. — Today we are charged with resolving the first appellate dispute arising from invocation of the Uniform Public Expression Protection Act, chapter 4.105 RCW (UPEPA). In 2021, our legislature became the first in the country to enact this uniform act. This legislative action followed on the heels of the perceived failure of Washington's prior anti-SLAPP[1] statute, former RCW 4.24.525 (2010), to achieve the societal goals sought by the legislature.

Herein, a private citizen and property developer, Siddharth Jha, brought a common law tort action against a political candidate, Varisha Khan, based on unflattering statements regarding Jha made by Khan during the course of her campaign. After giving Jha proper notice of her intent to do so, Khan moved to dismiss Jha's complaint as allowed by the uniform act. The trial court denied the

---

[1] Strategic Lawsuit Against Public Participation.

No. 83768-1-I/2

motion.  As also allowed by the uniform act, Khan took an immediate appeal.

Because the trial court erred by denying the motion to dismiss, we reverse.

I

Siddharth Jha filed an invasion of privacy by false light claim against

Varisha Khan and her spouse Yassir Jamal, based on statements Khan made

about him in an article she wrote for her campaign for the Redmond City Council.

Khan moved to dismiss Jha's complaint under UPEPA.  The trial court denied the

motion, finding that Jha presented issues of material fact.  Because the motion

should have been granted, we reverse and remand with instructions to enter

judgment in Khan's favor.

In 2019, Varisha Khan ran for election to a position on the Redmond City

Council against incumbent Hank Myers.  As part of her campaign, Khan wrote an

article directed to the voters of Redmond and published it on medium.com.

Khan's article, entitled "Vote for ethical, bold leadership in Redmond, WA,"

focused on her opponent and her view that Myers put the interests of developers

ahead of the interests of Redmond residents.  The article reads, in relevant part:

> It's reasonable to expect ethical, principled leadership from our
> elected officials, including at the local level. It's what we
> deserve. Unfortunately, my opponent in this race, Hank Myers,
> has a history of taking money from developers and putting their
> interests above the public interest.
>
> During this election year, Myers voted in support of developer
> proposals whom he took money from: Fred Proctor, who gave
> Myers $400 and Sidd Jha, who gave the $1,000 maximum
> donation and was recently involved in a legal case of revenge
> porn and abuse of his ex-girlfriend.

2

No. 83768-1-I/3

> Jha's proposal failed two years ago and once again does not
> meet the majority of planning requirements, but Myers voted yes
> anyway. The proposal passed, thus threatening to create a
> dangerous precedent where developers can disregard public
> transparency.[2]

Sidd Jha, aka Siddharth Jha, is the respondent herein.  In June 2019, Jha's ex-girlfriend (hereinafter A.S.) filed a lawsuit against him in New York state court.  In her complaint, A.S. made numerous allegations detailing Jha's abuse, including, but not limited to, physical violence, persuading her to retract statements made to the police, controlling her finances, and tracking her movements via cell phone.  A.S. further alleged that Jha had sent to her family members and employer multiple nude and/or sexual images of her.  For his part, Jha contends that the New York lawsuit was a "sham" brought by A.S. to cover up her own misdeeds.

On November 1, 2021, Jha filed a lawsuit against Khan, asserting claims of defamation, invasion of privacy by false light, invasion of privacy by publicity given to private facts, and intentional infliction of emotional distress.  On November 4, 2021, Khan sent Jha a written notice of Khan's intent to file a motion to dismiss under UPEPA.  This triggered a 14-day window within which Jha could either withdraw or amend his complaint.  RCW 4.105.020(1).  Jha took no action until over a month later.

As promised, Khan filed her UPEPA motion to dismiss on December 17,

---

[2] On appeal, Jha also claims that Khan made other false statements about him in flyers. These statements were not identified or referenced in either his original or first amended complaints, and there is no evidence of them in our record.  "This court will not consider allegations of fact without support in the record."  Lemond v. Dep't of Licensing, 143 Wn. App. 797, 807, 180 P.3d 829 (2008).

2021. This filing triggered an automatic stay of the proceedings. RCW 4.105.030.

Jha filed his first amended complaint on January 12, 2022. This complaint removed all claims except invasion of privacy by false light while containing the same factual allegations as contained in the original complaint. Khan interposed no objection to the amendments. Also on January 12, 2022, Jha filed a "Motion for Leave to File Motion for Leave to File Second Amended Complaint." In this motion, Jha indicated that he sought to file a second amended complaint in order to add unspecified federal causes of action. Khan opposed the motion. On February 8, 2022, the trial court granted Jha's motion, permitting him to move to amend his complaint.

The hearing on Khan's UPEPA motion to dismiss took place on February 14, 2022. After entertaining argument from both parties, the trial court stated that it would take the matter under advisement and review relevant authorities before issuing an order.

On February 18, 2022, before the trial court had issued its ruling on the UPEPA motion, Jha moved to file his second amended complaint. Jha's proposed second amended complaint added two claims under 42 U.S.C. § 1983, alleging violations of the due process clause and the equal protection clause of the Fourteenth Amendment to the United States Constitution.[3]

The trial court issued its order on Khan's UPEPA motion on March 1, 2022.

---

[3] U.S. CONST. amend XIV, § 1.

4

No. 83768-1-I/5

Therein, the trial court determined that

> (a) plaintiff has established a prima facie case as to each essential element of the cause of action of invasion of privacy by false light, and (b) genuine issues of material fact exist regarding, without limitation, the existence and scope of the alleged falsity and Khan's knowledge or reckless disregard of the alleged falsity.

The trial court also indicated that it believed there were unresolved material issues of fact concerning whether Khan's speech was protected by the First Amendment. On March 3, 2022, the trial court granted Jha's motion to file his second amended complaint. Jha filed his second amended complaint on March 11, 2022, eight days after Khan filed a notice of appeal.[4]

II

In 2020, the Uniform Law Commission drafted UPEPA as a means to combat "an abusive type of litigation called a 'SLAPP' or 'strategic lawsuit against public participation.'" UNIF. L. COMM'N, THE UNIFORM PUBLIC EXPRESSION PROTECTION ACT (2020): A SUMMARY 1 (undated), https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=dcbe7300-b708-66eb-843a-8a66ddf3ad7b&forceDialog=1. The Washington legislature enacted UPEPA in 2021. LAWS OF 2021, ch. 259. In doing so, Washington became the first state to adopt this uniform act.[5]

Similar to its predecessor statute, the Washington Act Limiting Strategic

---

[4] In response to the brief submitted by amicus, Jha submitted an untimely and overlength brief. We accept the brief, despite its untimely status, but strike all content after the 2,500th word.

[5] Kentucky and Hawaii have since enacted UPEPA. Public Expression Protection Act: Enactment History, UNIF. L. COMM'N, https://www.uniformlaws.org/committees/community-home?CommunityKey=4f486460-199c-49d7-9fac-05570be1e7b1 (last updated Oct. 28, 2022); KY. REV. STAT. ANN. §§ 454.460-.478; 2022 Haw. Sess. Laws act 96.

5

Lawsuits Against Public Participation, former RCW 4.24.525, UPEPA provides for early adjudication of baseless claims aimed at preventing an individual from exercising the constitutional right of free speech. Unlike its predecessor, however, UPEPA incorporates standards for adjudication that mirror those utilized in Civil Rules 12 and 56.

Pursuant to RCW 4.105.020(2), a party to a lawsuit may file a special motion for expedited relief to dismiss any cause of action "to which this chapter applies" within 60 days of service of the complaint. Before the party may do so, it must first provide notice of its intent to seek dismissal at least 14 days before filing the UPEPA dismissal motion in the trial court. RCW 4.105.020(1). During this 14-day period, the responding party may withdraw or amend its pleading "in accordance with applicable court rules." RCW 4.105.020(1).

Chapter 4.105 RCW applies to any claim asserted "against a person based on the person's:"

> (a) Communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
> (b) Communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding;
> (c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern.

RCW 4.105.010(2). There are certain exceptions to this rule, which are enumerated in RCW 4.105.010(3)(a).

It is the moving party's burden to establish that UPEPA applies to the cause of action. RCW 4.105.060(1)(a). Once the moving party has satisfied this

6

requirement, the burden shifts to the responding party to establish that a statutory exception applies. RCW 4.105.060(1)(b). If the responding party does not demonstrate that an exception applies, the trial court *must* dismiss the action if either:

> (i) The responding party fails to establish a prima facie case as to each essential element of the cause of action; or
> (ii) The moving party establishes that:
> (A) The responding party failed to state a cause of action upon which relief can be granted; or
> (B) There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

RCW 4.105.060(1). If the moving party prevails on the UPEPA motion, the trial court must award the party its costs, reasonable attorney fees, and reasonable litigation expenses. RCW 4.105.090(1).

UPEPA dictates that all provisions of the act "must be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Washington state Constitution." RCW 4.105.901. UPEPA also dictates that, "[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." RCW 4.105.902. Thus far, to our knowledge, no other state appellate court has issued a precedential decision applying or construing UPEPA.

III

In assessing whether the trial court erred by denying Khan's UPEPA

7

motion, we engage in the three-step analysis dictated by RCW 4.105.060(1). The trial court's order on Khan's motion does not specifically address the first step in the UPEPA analysis, whether the statute applies to Jha's cause of action. Jha asserts that the statute does not apply because Khan's statements were not on a matter of public concern. We disagree.

We review issues of statutory interpretation de novo. Pub. Util. Dist. No. 2 of Pacific County v. Comcast of Wash. IV, Inc., 8 Wn. App. 2d 418, 449, 438 P.3d 1212 (2019). Similarly, we review summary judgment-like orders de novo, viewing all evidence in favor of the nonmoving party. Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016).

UPEPA applies to a complaint or cause of action when it is asserted against a person based on the person's "[e]xercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern." RCW 4.105.010(2)(c). Whether speech is a matter of public concern is a question of law, which courts must determine "'by the content, form, and context of a given statement, as revealed by the whole record.'" Billings v. Town of Steilacoom, 2 Wn. App. 2d 1, 31, 408 P.3d 1123 (2017) (quoting Connick v. Myers, 461 U.S. 138, 147-48, 148 n.7, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). We have previously held that "[s]peech involves 'matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community.'" Spratt v. Toft, 180 Wn. App. 620, 632, 324 P.3d 707 (2014) (internal quotation marks omitted)

(quoting Snyder v. Phelps, 562 U.S. 443, 453, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)).

Reviewing the statements made by Khan in context, it is apparent that her speech was a matter of public concern.  The statements with which Jha takes issue are a small part of a much larger article concerning Khan's political opponent, Hank Myers.  Specifically, the article posits that councilmember Myers votes in the interest of unsavory business interests and political financiers rather than his constituents and urges Redmond residents to vote for Khan as the better alternative.  The official activities of an elected representative are without question a matter of public concern.  Furthermore, a political candidate "has a protected right to speak in furtherance of [her] candidacy."  Spratt, 180 Wn. App. at 630 (citing Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 434 (9th Cir.2014)).

Jha's argument to the contrary is unavailing.  First, Jha reads Khan's article in the narrowest way possible, rather than as a whole as the law dictates.  Second, the case upon which Jha relies, Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 164 Wn.2d 199, 189 P.3d 139 (2008), is both factually and legally inapplicable to this case.  Factually, the records analyzed in Bellevue John Does were documents pertaining to an internal investigation conducted by a school district.  Court records differ from government employee records in that there is a constitutional presumption of public concern as to the former.  WASH. CONST. art. I, § 10 ("Justice in all cases shall be administered openly.").  Legally, Bellevue John Does concerned the interpretation of an exception to the Public

No. 83768-1-I/10

Records Act,[6] which must be construed narrowly. 164 Wn.2d at 209. Here, however, we concern ourselves with a statute that the legislature has dictated must be construed broadly. RCW 4.105.901. Given the broad construction that must be given to "matter of public concern," we hold that Khan's statements fall within that definition. UPEPA therefore applies.

IV

Under the second step of the UPEPA analysis, the trial court found that Jha established a prima facie claim of invasion of privacy by false light. Khan asserts that this was erroneous because Jha did not make the requisite showing that the statements she made were false. We agree.

"Washington has adopted *Restatement (Second) of Torts* § 652E (Am. Law Inst. 1977), recognizing invasion of privacy by false light as an independent claim." Seaquist v. Caldier, 8 Wn. App. 2d 556, 564, 438 P.3d 606 (2019). To establish a prima facie claim for invasion of privacy by false light, a plaintiff must demonstrate that the defendant has publicized a statement placing them in a false light, so long as "(a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed." Eastwood v. Cascade Broad. Co., 106 Wn.2d 466, 470-71, 722 P.2d 1295 (1986). Although the plaintiff need not be defamed, there must nevertheless be some showing of falsity. Seaquist, 8 Wn. App. 2d at 573.

---

[6] Ch. 42.56 RCW.

No. 83768-1-I/11

The parties first dispute whether a prima facie claim of false light requires the plaintiff to establish that the speaker acted with actual malice as to the falsity of the statement or whether mere negligence is sufficient. This dispute arises because the United States Supreme Court in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), did not specify whether the actual malice standard it announced was applicable to false light as well as defamation claims. The result has been a split of authority among the states, with some applying the actual malice standard to false light claims, while others limit the actual malice standard solely to defamation claims. See Pfannenstiel v. Osborne Publ'g Co., 939 F. Supp. 1497, 1503 (D. Kan. 1996) (discussing split of authority). Our Supreme Court has yet to weigh in on this debate. We need not resolve this question today, as we hold that Jha has not established a prima facie claim of invasion of privacy by false light under either standard. We so hold because Jha has not presented evidence that any of Khan's statements are false.

In his complaint, Jha alleged that two statements made by Khan in her article placed him in a false light. First, Jha alleged that Khan's statement that he "was recently involved in a legal case of revenge porn and abuse of his ex-girlfriend" was false. Second, Jha alleged that Khan's statement that he "disregard[ed] public transparency" was false. We analyze each of these statements in turn.

11

No. 83768-1-I/12

V

Khan asserts that the trial court erred by finding that there were material issues of fact as to the falsity of her statement that Jha was "involved in a legal case of revenge porn and abuse of his ex-girlfriend." This is so, Khan asserts, because the statement was true. We agree.

No prima facie case of invasion of privacy by false light exists if the statement is true. Emeson v. Dep't of Corr., 194 Wn. App. 617, 640, 376 P.3d 430 (2016). "A 'provably false statement' is one that, as a statement of either fact or opinion, falsely expresses or implies provable facts about the plaintiff." Seaquist, 8 Wn. App. 2d at 565-66 (quoting Schmalenberg v. Tacoma News, Inc., 87 Wn. App. 579, 590-91, 943 P.2d 350 (1997)). When determining whether a statement is false, the court considers the statement in context and construes it by its ordinary meaning. Alpine Indus. Computers, Inc. v. Cowles Publ'g Co., 114 Wn. App. 371, 387, 57 P.3d 1178, 64 P.3d 49 (2002); accord Seaquist, 8 Wn. App. 2d at 566. The court "may not extend language by innuendo or by the conclusions of the pleader." Sims v. Kiro, Inc., 20 Wn. App. 229, 234, 580 P.2d 642 (1978).

Jha does not deny that he was in fact sued by his ex-girlfriend and that the complaint in that matter contains allegations of abuse and revenge porn. Rather, Jha asserts that this statement creates the false *implication* that he engaged in abuse and distributing revenge porn.[7] No Washington court has yet addressed

---

[7] Jha also repeatedly argues that the New York lawsuit was a "sham." In his statement of additional authorities, filed after oral argument in this court, Jha cites to Sheet Metal Workers' Int'l Ass'n v. NLRB, 716 F.2d 1249, 1266 (9th Cir. 1983), to argue that a "sham" lawsuit is not

12

No. 83768-1-I/13

whether a plaintiff can establish a prima facie case of invasion of privacy by false light when the claimed falsity is implicit rather than explicit.[8]  We hold that while a false implication may support a claim of false light, Jha has not presented evidence that Khan published any statements implying false facts about him.

Our Supreme Court has recognized that defamation by implication is a viable theory of recovery in Washington.  Mohr v. Grant, 153 Wn.2d 812, 822, 108 P.3d 768 (2005); but see Yeakey v. Hearst Commc'ns, Inc., 156 Wn. App. 787, 792, 234 P.3d 332 (2010) (rejecting discussion of defamation by implication in Mohr as dicta).  "Defamation by implication occurs when 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts.'"  Corey v. Pierce County, 154 Wn. App. 752, 761-62, 225 P.3d 367 (2010) (internal quotation marks omitted) (quoting Mohr, 153 Wn.2d at 823).

Not only are false light and defamation highly similar, but the Supreme Court has noted that "all defamation cases are potentially false light cases." Eastwood, 106 Wn.2d at 471.  If a plaintiff may be defamed by implication, and if all defamation may give rise to a false light claim, then logic dictates that a plaintiff may be placed in a false light by implication.

However, a statement does not imply false facts merely because someone might draw a negative conclusion from it.  "Merely omitting facts favorable to the

---

considered a lawsuit at all. Even if respondent's brief could be read to have contained this argument (it did not), the portion of the case to which Jha cites is the opinion of the dissenting judge.  Because dissents are not controlling precedent, we do not consider this argument further.

[8] Division Two agrees that this remains an open question. See Seaquist, 8 Wn. App. 2d at 573 n.4.

No. 83768-1-I/14

plaintiff or facts that the plaintiff thinks should have been included does not make a publication false." Mohr, 153 Wn.2d at 827. Rather, "the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts." Mohr, 153 Wn.2d at 827. In so holding, the Supreme Court rejected the appellate court's view that a statement could be defamatory if the inclusion of additional facts would make it "'less arbitrary and insensitive.'" Mohr, 153 Wn.2d at 830 (quoting Mohr v. Grant, 117 Wn. App. 75, 88, 68 P.3d 1159 (2003)).

Khan's statement does not imply any false facts about Jha. The statement that Jha was involved in a legal case of revenge porn and abuse does not, on its own, create the implication that Jha actually engaged in revenge porn and abuse. Indeed, in Sisley v. Seattle School District No. 1, 171 Wn. App. 227, 229, 235, 286 P.3d 974 (2012), we held that a news article stating that the plaintiffs "have also been accused of racist renting policies" did not transform the gist of the story into a statement that the plaintiffs "*are* racist landlords." Similarly, Khan's statement that Jha was "involved in a legal case of revenge porn and abuse" does not imply that Jha was *engaged* in revenge porn and abuse. This conclusion is not readily apparent from Khan's article; it is merely one that Jha himself draws.

Although not binding on our court, the opinion in Rogers v. Mroz, 502 P.3d 986 (Ariz. 2022), is instructive. In that case, Wendy Rogers and Steve Smith were rival candidates in a primary election for United States Representative. Rogers, 502 P.3d at 989. At the time, Smith was employed by Young Agency, a

14

No. 83768-1-I/15

talent agency that represented a significant number of minors. Rogers, 502 P.3d at 989. As part of her campaign, Rogers ran a radio advertisement that expressed these thoughts:

> "Tom O'Halleran is a dangerous leftist and ally of Nancy Pelosi and the open borders lobby, but he'll win again if we run Steve Smith for Congress. Smith is a slimy character whose modeling agency specializes in underage girls and advertises on websites linked to sex trafficking. Smith opposed Trump, never endorsed Trump against Clinton and ridiculed our much needed border wall.
>
> Who'll beat O'Halleran? Wendy Rogers. Wendy Rogers strongly supports President Trump and the President's conservative agenda. Wendy Rogers is a decorated Air Force pilot, small business owner, and major supporter of President Trump's border wall. Slimy Steve Smith can't beat O'Halleran and the anti-Trump left. Only Wendy Rogers will."

Rogers, 502 P.3d at 989. Young Agency and its owner (collectively Young) sued Rogers for defamation and invasion of privacy by false light. Rogers, 502 P.3d at 989. Although it was true that Young's advertisements had appeared on websites linked to sex trafficking, Young asserted that Rogers' statement implied that Young was complicit in the sex trafficking of children. Rogers, 502 P.3d at 989. The Supreme Court of Arizona rejected this contention.

The court did so after examining the statement in context, noting that the statement was part of a political smear campaign against Smith, with Young playing only a "supporting role." Rogers, 502 P.3d at 994. The court further noted that, while there could be many implications if the statement about the modeling agency was viewed in isolation, the radio advertisement as a whole supplied the implication to listeners: Smith was "slimy." Rogers, 502 P.3d at 994. The court concluded that "[t]he assertion that the contested statement implies

15

that Young is complicit in sex trafficking is simply too remote to infer on behalf of a reasonable listener in the context of an attack ad directed toward a specific named individual that aims to prove he is slimy." Rogers, 502 P.3d at 994. The court stated that if the claim was allowed to proceed, it would open the floodgates to anyone referenced in a political campaign, which would intolerably chill the right to free speech. Rogers, 502 P.3d at 995. The court thus concluded that Young had not established a material issue of fact concerning the falsity of Rogers' advertisement. Rogers, 502 P.3d at 995.

Just as with the statement in Rogers, the allegedly false statement herein was a small part of a larger attack advertisement against an identified political opponent. More compellingly, the statement cited by Jha was a mere one sentence of a four-page article. As in Rogers, Khan supplied the inference that she wished her readers to draw: that Hank Myers was "bought by developers" and put their interests above the interests of Redmond residents. The "gist" of the article, when viewed as a whole, has nothing to do with Jha; instead, the gist is that Myers is unworthy to serve on the Redmond City Council.

Finally, Washington, like Arizona, recognizes that the right to free speech is especially important during political campaigns and a certain amount of inflammatory rhetoric is to be expected. Seaquist, 8 Wn. App. 2d at 566-67 (stating that "the First Amendment applies to the fullest extent during a political campaign" and "audiences here . . . would fully expect political campaign materials to be saturated with mischaracterizations, rhetoric, and exaggeration"); Rogers, 502 P.3d at 995 ("'[I]n public debate [we] must tolerate insulting, and

16

No. 83768-1-I/17

even outrageous, speech in order to provide adequate "breathing space" to the freedoms protected by the First Amendment.'" (citations omitted) (quoting <u>Boos v. Barry, 485 U.S. 312, 322, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988)))</u>.  Viewing the statement about Jha in the context of the article in which it appeared, it cannot reasonably be read to imply anything false.

VI

Similarly, Jha has not presented evidence to support his contention that the statement that he "disregard[ed] public transparency"[9] is false.  This is so because the statement is an opinion, for which liability cannot attach.

A prima facie case of false light cannot be established if the challenged statement constitutes an opinion, as "[u]nder the First Amendment there is no such thing as a false idea."  <u>Gertz</u>, 418 U.S. at 339.  The determination of whether a statement is fact or opinion is a question of law.  <u>Benjamin v. Cowles Publ'g Co.</u>, 37 Wn. App. 916, 922, 684 P.2d 739 (1984).  When determining whether a statement is fact or opinion, we consider:

> (1) the entire article and not merely a particular phrase or sentence;
> (2) the degree to which the truth or falsity of a statement can be objectively determined without resort to speculation; and (3) whether ordinary persons hearing or reading the matter perceive the statement as an expression of opinion rather than a statement of fact.

<u>Benjamin</u>, 37 Wn. App. at 922-23.  "Even apparent statements of fact may assume the character of opinions, and thus be privileged, when made in 'public debate, heated labor dispute, or other circumstances in which an audience may

---

[9] Br. of Resp't at 33-34.

17

No. 83768-1-I/18

anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole.'" Camer v. Seattle Post-Intelligencer, 45 Wn. App. 29, 41, 723 P.2d 1195 (1986) (internal quotation marks omitted) (quoting Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980)).

Jha selectively quotes Khan's article to claim that Khan accused him of "disregard[ing] public transparency."[10]  Khan's actual statement, however, was that "Jha's proposal failed two years ago and once again does not meet the majority of planning requirements, but Myers voted yes anyway. The proposal passed, thus threatening to create a dangerous precedent where developers can disregard public transparency."

This is a statement about what Khan fears might happen in the future if Myers were reelected.  As a predictive statement, it is incapable of being proved and thus cannot be deemed a fact.  Furthermore, "disregard[ing] public policy" is an ambiguous statement that no ordinary person would interpret as a statement of provable fact.  The trial court erred by ruling otherwise.

In sum, the trial court erred by ruling that Jha had presented a prima facie case of invasion of privacy by false light.  To the contrary, Jha presents no evidence that the statements made by Khan were provably false.  Because Jha failed to satisfy his burden of showing a prima facie case of invasion of privacy by false light, the trial court should have granted Khan's UPEPA motion and dismissed Jha's claims with prejudice.

---

[10] Br. of Resp't at 33-34.

18

No. 83768-1-I/19

VII

Although Jha's failure to establish a prima facie case was sufficient for the trial court to grant Khan's UPEPA motion, the trial court could also have granted the motion on the basis that the moving party was entitled to judgment as a matter of law.[11]  This is so because Khan has demonstrated that her statements were protected by the First Amendment's fair reporting privilege.

Certain privileges shield a speaker from liability for defamation and false light, regardless of the truth or falsity of the statement.  Alpine Indus., 114 Wn. App. at 381.  Washington law provides that a defendant's statements are privileged when the defendant is "reporting on defamatory statements contained in official proceedings and records."  Clapp v. Olympic View Publ'g Co., 137 Wn. App. 470, 475-76, 154 P.3d 230 (2007) (citing Alpine Indus., 114 Wn. App. at 382).  "[B]ecause the filing of a pleading is a public and official act in the course of judicial proceedings, the fair reporting privilege attaches to pleadings even if the court has yet to act on them."  Clapp, 137 Wn. App. at 476.

We agree with amici Reporters Committee for Freedom of the Press and 18 Media Organizations that the question of privilege must be addressed when ruling on a UPEPA motion.  Here, the trial court determined that it could not decide whether Khan's speech was protected by either the United States or

---

[11] Jha additionally argues that the UPEPA motion was properly denied under step two of the statutory analysis, asserting that his complaint falls under the exception outlined in RCW 4.105.010(3)(a)(i).  This argument is meritless.  RCW 4.105.010(3)(a)(i) provides that UPEPA does not apply to a cause of action asserted "[a]gainst a governmental unit or an employee or agent of a governmental unit acting or purporting to act in an official capacity."  Jha's lawsuit was filed against Khan in her individual capacity only.  Therefore, this exception does not apply.

19

Washington Constitutions because there were genuine issues of fact to be decided first. But it is not within the purview of the jury to ensure that a litigant's constitutional rights are respected. See Rogers, 502 P.3d at 995 ("[A] jury's charge, unlike ours, does not include safeguarding freedom of speech."); cf. Snyder, 562 U.S. at 458 (jury finding of outrageousness cannot overcome constitutional right to picket). Rather, it is the trial court's duty to address claims of privilege. This is especially important because:

> "Serious problems regarding the exercise of free speech and free press guaranteed by the First Amendment are raised if unwarranted lawsuits are allowed to proceed to trial. The chilling effect of the pendency of such litigation can itself be sufficient to curtail the exercise of these freedoms."

Mark v. Seattle Times, 96 Wn.2d 473, 485, 635 P.2d 1081 (1981) (quoting Tait v. KING Broad. Co., 1 Wn. App. 250, 255, 460 P.2d 307 (1969)); accord Sisley, 171 Wn. App. at 234.

Delaying assessment of the movant's constitutional rights until *after* the jury finds facts entirely defeats the legislature's intent in enacting UPEPA. See RCW 4.105.901 ("This chapter must be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Washington state Constitution."). And, because UPEPA "is essentially an expedited summary judgment motion," Am. Stud. Ass'n v. Bronner, 259 A.3d 728, 740 (D.C. 2021); see also RCW 4.105.060(1)(c)(ii)(B) (utilizing language identical to CR 56(c)), the trial court should not apply different evidentiary requirements than apply on summary judgment.

20

In most defamation and false light cases, the burden falls to the plaintiff to prove abuse of a conditional privilege. Haueter v. Cowles Publ'g Co., 61 Wn. App. 572, 587, 811 P.2d 231 (1991) (citing Bender v. City of Seattle, 99 Wn.2d 582, 601, 664 P.2d 492 (1983)). However, the fair reporting privilege is incapable of being abused; either the privilege applies or it does not. Alpine Indus., 114 Wn. App. at 385. The court determines this question as a matter of law. Alpine Indus., 114 Wn. App. at 386. If, on summary judgment, the court finds that the fair reporting privilege applies, the plaintiff's claim must be dismissed. Alpine Indus., 114 Wn. App. at 386. Because a claim of false light must be dismissed on summary judgment when a constitutional privilege applies, so too must the claim be dismissed on a UPEPA motion when such a privilege applies.

Here, Khan's article stated that Jha was "involved in a legal case of revenge porn and abuse of his ex-girlfriend." Khan argues that the fair reporting privilege applies because her statement was a fair abridgement of the proceedings in the New York lawsuit against Jha.[12] Jha contends that the statement was not a fair abridgement of the proceedings, as Khan needed to qualify her statement as "allegations." But Washington law has no such requirement.

---

[12] Appellants ask this court to take judicial notice of the existence of the New York lawsuit and the complaint filed therein. Respondent objects to this request. Both the complaint and the motion to dismiss filed in the New York lawsuit were provided to the trial court for consideration on the UPEPA motion. Neither party objected to the admissibility of these documents. We may therefore consider them as we would any other evidence submitted in conjunction with a dispositive motion. RAP 9.12.

Our recent decision in McNamara v. Koehler, 5 Wn. App. 2d 708, 429 P.3d 6 (2018), is controlling. Therein, attorney Koehler and her employer Stritmatter Kessler Whelan Koehler Moore Kahler (hereinafter SKW), a law firm, represented two clients in a wrongful death lawsuit against McNamara. SKW's website had a page dedicated to the case, which included a picture of McNamara with the caption "(McNamara) 'is wanted by the judicial authorities of Belize for prosecution to serve a sentence.'" McNamara, 5 Wn. App. 2d at 711. SKW's website also included a list of notable cases that the firm handled, including this blurb about the wrongful death suit: "'The wrongful death case involves an alleged murder of Mr. McNamara by Defendant Tracy Nessl (a.k.a. Tracy McNamara). The motive is believed to include Ms. McNamara's wish to acquire Mr. McNamara's financial assets.'" McNamara, 5 Wn. App. 2d at 712 n.3. McNamara sued Koehler and SKW for defamation. McNamara, 5 Wn. App. 2d at 712.

We held that the fair reporting privilege applies to any type of media, including blogs and webpages, "so long as (1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgment of the official report." McNamara, 5 Wn. App. 2d at 716. We noted that "'[f]or a report to be a fair abridgement of an official proceeding, surgical precision is not required so long as the report is substantially accurate and fair.'" McNamara, 5 Wn. App. 2d at 716 (quoting Alpine Indus., 114 Wn. App. at 386). Applying this to the alleged defamatory statements, we held that the statements that McNamara was wanted for murder and that her motive was to acquire the

22

decedent's property were all fair and accurate accounts of the allegations contained in the wrongful death complaint.  McNamara, 5 Wn. App. 2d at 718-19.  Although one sentence on the website did use the word "alleged," not all of the statements had similar qualifications, and we did not hold that such a qualification was necessary.  McNamara, 5 Wn. App. 2d at 718-19.

In reviewing the complaint filed in the New York lawsuit, Khan's statement that Jha was "involved in a legal case of revenge porn and abuse" is an accurate abridgment thereof.  The New York complaint against Jha contains numerous pages detailing the abuse that A.S. allegedly suffered at the hands of Jha.  The complaint also contains allegations that Jha distributed nude photos of A.S. without her consent and asserts a claim under New York City's revenge porn ordinance.  Although Khan's statement says nothing about the motion to dismiss that Jha filed in the New York court, as Khan correctly points out, it need not do so.  We say this because "[m]erely omitting facts favorable to the plaintiff or facts that the plaintiff thinks should have been included does not make a publication false and subject to defamation liability."  Mohr, 153 Wn.2d at 827.

Jha nevertheless argues that, in order for the fair reporting privilege to apply, the statement must be *attributed to* an official proceeding, i.e., that the official proceeding must either be cited or linked to.  We disagree.  In Mark v. Seattle Times, 96 Wn.2d at 487, our Supreme Court adopted the articulation of the fair reporting privilege set forth in the Restatement (Second) of Torts.  This articulation of the privilege includes neither the words "attributed to" nor the words "attributable to" but instead reads as follows:

23

No. 83768-1-I/24

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

RESTATEMENT (SECOND) OF TORTS § 611 (AM. LAW INST. 1977).

The court in Mark did not add anything to this articulation. Instead, its inquiry was directed toward identifying that which constitutes an official proceeding. Mark, 96 Wn.2d at 488-89. The court held that an affidavit of probable cause is a record of an official proceeding to which the privilege applies, but that the privilege did not apply to statements made by the prosecutor and investigator outside of the court record. Mark, 96 Wn.2d at 488-89. Subsequent Supreme Court decisions also did not add anything to the articulation of the fair reporting privilege adopted from the Restatement. See Herron v. Trib. Publ'g Co., 108 Wn.2d 162, 179, 736 P.2d 249 (1987) ("Washington . . . recognized a conditional privilege protecting the republisher when the defamatory statement originally was made in the course of an official proceeding or contained in an official report.").

In 2002, Division Three examined Restatement section 611 in depth. The court noted that the purpose of the fair reporting privilege is "to serve the public's interest in obtaining information as to what transpires in official proceedings and public meetings." Alpine Indus., 114 Wn. App. at 384. The court reasoned that the fair reporting privilege is broader than any other privilege found in the Restatement and may apply even when the publisher does not believe the official report is true. Alpine Indus., 114 Wn. App. at 384. Based on section 611 of the

24

No. 83768-1-I/25

Restatement and the comments thereto, the court held that "to determine whether a communication falls within the fair reporting privilege, we engage in two inquiries: (1) whether the report is attributable to an official proceeding; and (2) whether the report is accurate or a fair abridgement." Alpine Indus., 114 Wn. App. at 384.

We have since adopted this articulation of the fair reporting privilege.[13] Momah v. Bharti, 144 Wn. App. 731, 745, 182 P.3d 455 (2008); accord McNamara, 5 Wn. App. 2d at 716. This articulation of the fair reporting privilege is consistent with federal law, which holds that it is not necessary to cite directly to the original source of the statement; rather, the privilege applies so long as it is apparent that the statement "is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings." Dameron v. Wash. Mag., Inc., 779 F.2d 736, 739 (D.C. Cir. 1985); accord Ditton v. Legal Times, 947 F. Supp. 227, 230 (E.D. Va. 1996), aff'd, 129 F.3d 116 (4th Cir. 1997); Pittman v. Gannett River States Publ'g Corp., 836 F. Supp. 377, 382-83 (S.D. Miss. 1993).

Khan's statement that Jha was "involved in a legal case of revenge porn and abuse of his ex-girlfriend" is easily attributable to an official proceeding: the lawsuit filed in New York state court by A.S. Khan was not required to link to the docket in order for the privilege to apply. Because Khan's statement was

---

[13] The only Division Two opinion to examine the fair reporting privilege in the past two decades is Clapp v. Olympic View Publ'g Co., LLC, 137 Wn. App. 470, 154 P.3d 230 (2007). The court therein stated that "[t]he fair reporting privilege attaches to a report on official proceedings or records that (1) attributes the report to the official record and (2) is accurate and complete or a fair abridgement of the record." Clapp, 137 Wn. App. at 477. Clapp cites Alpine Industries for this proposition, but offers no explanation for its altered articulation of the fair reporting privilege. Clapp, 137 Wn. App. at 477.

25

protected by the fair reporting privilege, the trial court could have granted Khan's

UPEPA dismissal motion on this ground as well. Accordingly, we also reverse on

this alternative basis.

VIII

After hearing argument on Khan's UPEPA motion (but before issuing an

order thereon), the trial court granted Jha's "Motion for Leave to File Motion for

Leave to File Second Amended Complaint." Shortly thereafter, the trial court

also granted Jha's motion to file a second amended complaint. Khan contends

that the trial court erred by making these rulings because UPEPA provides that

the proceedings were automatically stayed once the dismissal motion was timely

filed.[14] We agree.

The pertinent statute provides:

> During a stay under this section, the court for good cause may hear
> and rule on:
> (a) A motion unrelated to the motion under RCW 4.105.020;
> and
> (b) A motion seeking a special or preliminary injunction to
> protect against an imminent threat to public health or safety.

RCW 4.105.030(7).

The parties disagree as to whether Jha made the requisite showing of

good cause. We need not resolve this issue because we decide the question

presented on a different basis.

---

[14] Jha contends that this court has no authority to review the orders lifting the stay because they are not appealable. Jha's argument relies upon a misreading of the Rules of Appellate Procedure. Although the orders are not individually appealable as a matter of right, pursuant to RCW 4.105.080, they are reviewable under RAP 2.4(a), having been designated in Khan's notice of appeal.

26

"When interpreting a statutory provision, courts 'must give meaning to every word in a statute.'" Smith v. Dep't of Labor & Indus., 22 Wn. App. 2d 500, 511, 512 P.3d 566 (2022) (quoting Bennett v. Seattle Mental Health, 166 Wn. App. 477, 483, 269 P.3d 1079 (2012)). RCW 4.105.030(7) does not authorize the trial court to lift the stay and entertain any motion upon a showing of good cause. Rather, the statute limits the type of motion that the trial court may consider. First, the trial court may hear a motion unrelated to the UPEPA motion. RCW 4.105.030(7)(a). Second, the trial court may hear a motion seeking a special or preliminary injunction that has been filed "to protect against an imminent threat to public health or safety." RCW 4.105.030(7)(b). When the motion falls under one of those two categories, the trial court may lift the stay once the moving party demonstrates good cause. Had the legislature desired to permit the trial court to hear *any* motion upon a showing of good cause, it would have said so. Accordingly, a motion that does not fall under either of these two categories (and is not a motion for an award of costs, attorney fees, or expenses under RCW 4.105.090[15]) cannot be entertained while the UPEPA dismissal motion remains pending.

Jha's motion for leave to file a second amended complaint is not one of the two types of motion that the trial court is authorized to entertain once the stay is in effect. Jha sought no special or preliminary injunctive relief. Neither was Jha's motion unrelated to Khan's UPEPA dismissal motion. Jha sought leave to

---

[15] RCW 4.105.030(5) provides that "[a] motion under RCW 4.105.090 for costs, attorneys' fees, and expenses is not subject to a stay under this section."

27

file a motion to amend his complaint—the very complaint that Khan was seeking to dismiss in its entirety in her UPEPA motion. In fact, Jha readily admitted that he was seeking to amend his complaint in order to avoid dismissal by virtue of Khan's UPEPA motion.[16] Khan's UPEPA prefiling notice had already granted Jha 14 days to amend his complaint to either remove meritless claims or assert meritorious ones before Khan was authorized to file her UPEPA motion and trigger the stay. RCW 4.105.020(1). But Jha did not do so.[17] It was only well after Khan filed her UPEPA motion that Jha expressed any desire to assert federal claims. Under these circumstances, Jha's motion cannot reasonably be characterized as being unrelated to the UPEPA motion. Cf. JKC3H8 v. Colton, 221 Cal. App. 4th 468, 477-78, 164 Cal. Rptr. 3d 450 (2013) ("A plaintiff . . . may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint . . . in response to the motion.").

Because the trial court lacked statutory authority to hear *related* motions, even upon a showing of good cause, the trial court erred by entertaining Jha's motion for leave to amend prior to resolving Khan's UPEPA dismissal motion.[18]

---

[16] Jha argued in his motion to lift the stay that there was good cause to hear his motion for leave to amend because "federal claims are exempt from UPEPA's purview."

[17] Jha filed a motion to amend his complaint to remove his claims for defamation, invasion of privacy by publicity given to private facts, and intentional infliction of emotional distress. Khan did not object to the motion. Although the trial court did not grant the motion until after Khan filed her UPEPA motion, the trial court construed the UPEPA motion as applicable to the first amended complaint given the identical factual allegations.

[18] Khan further argues that the trial court should not have granted Jha's motion to amend his complaint, as the federal claims asserted in the second amended complaint were futile. Due to the mandatory stay under RCW 4.105.030(7), the trial court should never have entertained Jha's second motion to amend his complaint. Instead, the trial court should have granted Khan's UPEPA motion, which would have resulted in dismissal of Jha's lawsuit with prejudice.

Accordingly, on remand, the trial court must vacate both the Order Granting Plaintiff's Motion for Leave to File Motion for Leave to File Second Amended Complaint, entered on February 8, 2022, and the Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint, entered on March 3, 2022.

IX

Both parties request an award of attorney fees on appeal. As the prevailing party, Khan is entitled to an award of fees pursuant to RAP 18.1 and RCW 4.105.090(1). Additionally, because we hold that the UPEPA motion should have been granted in Khan's favor, Khan is entitled to an award of fees incurred in the trial court pursuant to RCW 4.105.090(1). For the sake of judicial economy and to expedite relief, we instruct the trial court to make a determination as to the amount of attorney fees and costs awardable to Khan at both the trial and appellate level.[19]

Reversed and remanded.

Dwyer, J.

WE CONCUR:

Coburn, J.          Smith, A.C.J.

---

[19] This should include an appropriate award of "reasonable litigation expenses," if any, as authorized by RCW 4.105.090.

29